Russell BROWN, Appellant (Principal Respondent Below),

v.

Martha BROWN, Appellee (Principal Petitioner Below).

No. 4–883A271.

Court of Appeals of Indiana, Fourth District.

May 15, 1984.

Patrick Murphy, Anderson, for appellant.

Stephen C. Smith, Anderson, Gerald P. Shine, Jr., Child Support Div., Anderson, for appellee.

YOUNG, Judge.

Appellant Russell Brown appeals from a trial court order transferring custody of his two minor daughters, Darlene and Leora, from him to their mother Martha Brown. After reviewing the record, we agree with Russell that Martha failed to make a "showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind. Code 31–1–11.5–22(d). We also agree with Russell's contention that the proceedings surrounding the change of custody were irregular enough to constitute an abuse of discretion as the special judge and commissioner failed to comply with statutory requirements and the Indiana Trial Rules. We reverse.

### FACTS

When Russell and Martha were divorced in April 1976, Martha was awarded custody of their two children. In mid-1979, Martha, who was living in California, called Russell in Indiana and asked him to come and get the girls. Russell, at that time and at the time of the appeal, was living with a woman and her four sons. Russell travelled to California, picked up the girls, and brought them to Indiana where he was granted custody in September 1979. Martha returned to Indiana in December 1979 but did not challenge the September action. For almost three years both parents remained in Madison County where Russell had custody over the two daughters and Martha had regular visitation. Neither party paid support to the other.

In September 1982, a petition was filed requesting a support order against Martha. In October 1982, Martha sought to have custody of her daughters transferred to her, but no action was taken until February 1983.

From February through May 1983, three judicial officers unsuccessfully tried to sort out the custody dispute. On February 11, 1983, the presiding judge granted Martha's request for a home study by the county welfare department and ordered that such a study be completed for use in the custody proceeding. A week later, Martha returned to court seeking a Temporary Emergency Order giving her immediate custody of the girls. She claimed an immediate change in custody was warranted because the girls were not properly cared for and their health and well-being were endangered by lack of cleanliness. A special judge issued an ex parte order which immediately transferred custody of the children to Martha. Although Russell was not present when the order was granted and twice sought to have the order dissolved, no custody hearing was held until two months had elapsed.

On April 11 and 14, a master commissioner presided over a custody proceeding. Martha and other witnesses testified that the girls had been seen during the past year in an unkempt and unclean condition, and Russell and his witnesses denied the girls were unclean. On the final day of the proceedings, the welfare department presented a home study report but did not file its completed report until the day after the trial. Neither report suggested that

either home was dangerous, that either parent was unfit, or that either child was neglected or in danger.

At the close of testimony on April 14, the master commissioner stated that he found no evidence of neglect or mistreatment in Russell's home but that he was going to leave Darlene and Leora with their mother with whom they had been staying since February. Because Martha had relinquished custody of the two girls once before, however, the commissioner refused to award her full custody. Instead he made the girls "wards of the court" subject to the supervision of the county welfare department.

The commissioner's written findings were filed in late May 1983 and adopted by the court in June. They suggest that the transfer of custody was based on the desire of the girls, ages 9 and 7, to remain with their mother and the commissioner's belief that the girls would benefit from more individual attention than they could receive in Russell's home.

## DECISION

█ Child custody determinations fall squarely within the discretion of the trial courts, and such decisions will not be disturbed on appeal unless a trial court has abused its discretion. *Poret v. Martin,* (1982) Ind., 434 N.E.2d 885; *Campbell v. Campbell,* (1979) Ind.App., 396 N.E.2d 142. *See also Marshall v. Reeves,* (1974) 262 Ind. 107, 311 N.E.2d 807. Indiana courts have found such abuses when: (1) Custody was modified without substantial and continuous changes in conditions having occurred. *Pribush v. Roy,* (1983) Ind.App., 456 N.E.2d 747; *Moutaw v. Moutaw,* (1981) Ind.App., 420 N.E.2d 1294; *Whitman v. Whitman,* (1980) Ind.App., 405 N.E.2d 608, and (2) Procedural irregularities interfered with the decision-making process. *Hayden v. Hite,* (1982) Ind., 437 N.E.2d 133, 136; *In Re Marriage of Henderson,* (1983) Ind. App., 453 N.E.2d 310. Both sets of circumstances exist in this case.

## I. Change in Condition

Indiana law specifies that a custody order will be modified "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31-1-11.5-22(d). The language of the modification provision of the statute contrasts with the language in the initial custody determination provision, which speaks of the "best interests of the child." *See* Ind. Code 31-1-11.5-21(a). The initial custody section directs the trial court to look to the totality of circumstances; the modification section directs the court's attention to *changes* in those original circumstances.

The reason the focus differs between the initial custody determination and a modification hearing is because the legislature and the courts recognize that a stable environment is in a child's best interest. *Moutaw v. Moutaw, supra,* 420 N.E.2d at 1296 (change in custody disrupts a child's living arrangement and a change in environment is ordinarily not conducive to a child's welfare); *Whitman v. Whitman, supra,* 405 N.E.2d at 611 (promoting stability for a child ensures that the child's best interests will be paramount).

The testimony and findings in this case focused on general conditions, not changes in circumstances. Much was made, for example, of the fact that in Russell's home the girls lived with four other children and were taken care of by a woman with whom Russell lived but had not married. In fact, this was not a change in circumstances. Russell lived with the same woman and her sons at the time he was awarded custody in 1979 and Darlene and Leora were already living with them.

█ Even when courts find change in circumstances, they may not modify custody unless change is "so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31-1-11.5-22. Accordingly, a change which prompts a modification in custody must be of a decisive nature or modification of custody is in error. *Pribush v. Roy, supra.* In *Pribush,* the father who sought to have

custody modified did not meet his burden of proof of showing a decisive change in circumstance which affected the child. This court noted that a modification of custody was warranted only when the moving party showed a decisive change of conditions in the custodial home or a change in the treatment of the child in the custodial home which necessitated his removal from that home. *Id.*

In this case, the only evidence of any change in circumstance is one sentence suggesting the alleged uncleanliness had arisen within the past year, but the commissioner specifically declined to make a finding on the girls' cleanliness. In light of the commissioner's stated refusal to make a finding on this point and the lack of evidence that any change of condition had reached the level of substantial or decisive, we hold that Martha did not meet her burden of proof in showing that a modification of custody was warranted. In ordering such a modification, therefore, the trial court abused its discretion; and, accordingly, we reverse.

## II. Procedural Irregularities

Because child custody proceedings implicate the fundamental relationship between parent and child, Indiana courts recognize that procedural due process must be provided to protect the substantive rights of the parties. *See Hayden v. Hite,* (1982) Ind., 437 N.E.2d 133, 136; *In Re Marriage of Henderson,* (1983) Ind.App., 453 N.E.2d 310. The Indiana legislature has provided a fairly detailed list of procedural requirements for courts to follow in custody and modification cases. Ind.Code 31-1-11.5-20 to 24. Because the procedures were not followed in at least three instances the irregularities that occurred in the proceedings constitute an abuse of trial court discretion and an independent ground for reversal.

The first procedural irregularity was the delay between the granting of the emergency order and the hearing. Although the statute and the trial rules both make provisions for emergency orders, both rec-

ognize that such orders are to be temporary in nature and that an evidentiary hearing is to be scheduled as soon as possible. *See, e.g.,* Ind.Code 31-1-11.5-23(a) ("Custody proceedings shall receive priority in being set for hearing."); Ind.Rules of Procedure, Trial Rule 65(B) ("hearing ... shall be held at the earliest convenience of the court"). A prompt hearing is especially essential in a custody case where the parties are dueling for a child's affections and the longer a delay, the more chance one party has to influence the child. When the parent who has the opportunity to exert the influence has received temporary custody in an ex parte proceeding, there is even a greater reason for having a prompt hearing.

In this case, Martha received custody during an ex parte proceeding, and no hearing was held for two months. As the commissioner noted in his findings, he was influenced by the girls' testimony that they wished to remain with their mother. An opportunity to be heard is essential before a parent can be deprived of custody. *Hayden v. Hite, supra,* 437 N.E.2d at 136. Because a delay in custody hearing may increase the chances of a custodial parent eventually being deprived of custody, it is not reasonable for a custody hearing to follow an ex parte transfer of custody by two months.

Once the hearing took place, another procedure that safeguards parental rights was ignored. One type of evidence trial courts use in determining whether or not to modify custody orders is reports of welfare departments. Trial courts are empowered by the statute to order and consider such reports. Ind.Code 31-1-11.5-22. Because such reports may contain information and suggestions prejudicial to the claim of one or both of the parties, the statute also contains a provision for the parties or their counsels to be given copies of the reports ten days before the proceeding so that they may be prepared to cross-examine the person who compiled the report or the sources of her information. Ind.Code 31-1-11.5-22(c). In this case, the report was not

presented until the last day of the proceedings, and the final report was not written or submitted to the court until the day after the hearing. As the report preferred Martha over Russell and the court ruled against Russell, his rights could well have been prejudiced by not having access to the report ten days before the hearing as is required by statute.

█ The final irregularity in the proceeding has to do with the actual order where the children were made "wards of the court" without any of the traditional procedures of finding parental unfitness. Indiana courts can award custody of a child to someone other than the parents. *Lord v. Lord*, (1982) Ind.App., 443 N.E.2d 847. Such awards are usually made only after parents have been determined to be unfit or when parents have all but abandoned the child to the care of that third person. *Franks v. Franks*, (1975) 163 Ind.App. 346, 323 N.E.2d 678; *Hendrickson v. Binkley*, (1974) 161 Ind.App. 388, 316 N.E.2d 376, 381 (evidence of parental unfitness must be clear and cogent to warrant giving custody to third party).

In this case, the commissioner specifically found both parents to be fit and repeated several times that the transfer of custody in no way meant that he thought Russell to be an unfit parent. Also in this case, unlike others where third parties were awarded custody, the parents had not abandoned the children; both parents wanted custody.

By statute, a trial court does have the authority in initial custody determinations to involve an agency if the parents agree or he finds the child's health so requires. Ind. Code 31–1–11.5–21(c). That statute is inapposite, however, for three reasons: (1) this case involved a custody modification which is governed by Section 31–1–11.5–22 not 31–1–11.5–21; (2) Section 31–1–11.5–21(c) makes no reference to "wards of the court" which would seem to be a narrowing of traditional parental custody prerogatives; and (3) the involvement of the welfare department was prompted by Martha's actions in 1979 rather than the children's current situation. There is nothing in either statute that authorizes a trial court to remove children from their father's custody and transfer them to a bifurcated custody arrangement between the mother and the county welfare department and the court.

Indiana law does provide for a procedure where courts and welfare departments can oversee parent-child relationships, but those procedures were not followed here. A court may order an agency to intervene if a child is determined to be in need of services. Ind.Code 31–6–4–15.4, –15.8 (West Supp.1983). In this case, however, none of the procedures for a CHINS determination were followed. *See* Ind.Code 31–6–4–13.5 (West Supp.1983). Moreover, in this case there was no finding of neglect or that the children were in need of shelter, food, education, or any of the deprivations that trigger a CHINS determination. *See* Ind.Code 31–6–4–3.

█ Because the delay in the hearing, lack of access to the welfare report, and final determination in this case did not comply with statutory requirements and could well have prejudiced Russell's ability to retain custody of Darlene and Leora, the procedural irregularities constitute an abuse of discretion.

For the reasons noted above, we reverse and remand for further proceedings consistent with this opinion.

CONOVER, P.J., concurs.

MILLER, J., concurs.