**Janice H. WILCOX, Appellant-Respondent,**

v.

**Timothy J. WILCOX, Appellee–Petitioner.**

No. 17A05–9303–CV–110.

Court of Appeals of Indiana, Fifth District.

June 16, 1994.

John P. Bullman, Bullman Law Office, Fort Wayne, for appellant.

Frederic L. Romero, Romero & Thonert, Auburn, for appellee.

BARTEAU, Judge.

In this interstate custody dispute, Janice Wilcox (Mother) appeals an order of the De-Kalb County Circuit Court changing custody of the parties's two children from Mother to Timothy Wilcox (Father). The parties were divorced in August of 1989. Several post-dissolution petitions involving custody issues, as well as property settlement issues, were filed in the DeKalb Circuit Court in Indiana and the Wilson County Circuit Court in Tennessee where Mother currently resides. Of the four issues raised by Mother in this appeal, we address only two:

I. Whether the DeKalb Circuit Court had subject matter jurisdiction when it modified the custody order; and

II. Whether the DeKalb court committed reversible error by waiting fifteen and one-half months before holding a hearing after modifying custody by an ex parte order.

We reverse.

### FACTS

Mother and Father were divorced in August, 1989, by order of the DeKalb court.

The parties have two children, a daughter, now eleven years old, and a son, now eight years old. The DeKalb court incorporated into its order the parties's agreement, by which Mother was granted custody of the two children and was given permission to move her residence anywhere in the United States. Father's visitation schedule included an extended summer visit with the children. The agreement provided that the "DeKalb Circuit Court shall at all times have continuing and preferred jurisdiction to enforce or modify" any custody order. Supp.R. 7. Mother moved with the children to Tennessee two days after the divorce.

The record reveals that several post-dissolution petitions were filed in both the DeKalb court and the Wilson court. A summary of the action taken in the DeKalb court follows: On October 16, 1989, Mother informed the DeKalb court by a letter that Father had failed to comply with the property settlement and custody stipulation. After several continuances and motions by both parties, the court ruled on July 17, 1990. The court's order included modification of Father's visitation schedule and a finding that Mother was in contempt of court. The court supplemented this order on August 3, 1990, and on August 24, 1990. Father then filed a Motion for Rule to Show Cause and Notice of Hearing on January 9, 1991. On August 14, 1991, Father filed an "Emergency Petition for Temporary Care, Custody and Control of the Parties Minor Children by Petitioner, Without Notice, Petition for Rule to Show Cause as Against Respondent and Petition for Modification of Custody...." The August 14, 1991, petition is relevant to the case before us. The court granted Father's request for temporary custody on August 16, 1991, two days before the children were to return to Tennessee. A hearing was eventually scheduled on the custody modification for December 1 and 2, 1992, more than fifteen months after the temporary change in custody was ordered. By order of December 12, 1992, the court modified custody in favor of Father.[1]

---

1. The DeKalb court also found Mother in contempt; however, she does not appeal this determination.

Meanwhile, in the Wilson court, several proceedings took place. On December 14, 1990, Mother sought a finding of contempt, injunctive relief, an increase in child support, support arrearages, and a prayer that all child custody decisions be made in Tennessee. Mother amended her original contempt petition on January 9, 1991. The Wilson court eventually ruled on Mother's petition as well as other pending matters on June 5, and July 1, 1991. Among other things, the Wilson court modified Father's summer visitation schedule with the children and increased the child support payable by Father. On August 22, 1991, after the order from the DeKalb court granting Father temporary custody, Mother filed a petition for contempt for Father's failure to return the children to her in contradiction of the Wilson court's order. She also sought child support arrearages and attorney fees. Father sought summary judgment on Mother's petition. After a hearing, the Wilson court denied Father's summary judgment motion and found him in contempt. Mother was permitted to amend her petition to include a petition for a change of custody back to her. The trial court granted Mother's petition for change of custody on May 20, 1992. The Wilson court's order was subsequently reversed by the Court of Appeals of Tennessee, Middle Section, which determined that the Wilson court did not have subject matter jurisdiction.

### *JURISDICTION*

Mother argues that the orders of the DeKalb court are void because that court lacked jurisdiction under Indiana's enactment of the Uniform Child Custody Jurisdiction Act (UCCJA).[2] She argues that Tennessee, not Indiana, is the home state of the children; therefore, Indiana does not have jurisdiction. She also argues that the trial court violated the Parental Kidnapping Prevention Act, 28 U.S.C. 1738A(e), by entering an ex parte order granting Father temporary custody of the children. According to Mother, failure to comply with the Parental Kidnapping Prevention Act (PKPA) makes the order void.

■ Mother argues that Tennessee is the children's home state; therefore, under the UCCJA, Tennessee, and not Indiana, has jurisdiction. The UCCJA is the "exclusive method of determining the subject matter jurisdiction of a court in a custody dispute with interstate dimensions." *Caban v. Healey* (1994), Ind.App., 634 N.E.2d 540. Under the UCCJA and the PKPA, the court which entered the original child custody decree has continuing exclusive jurisdiction until the children and all the parties have left the state. I.C. 31–1–11.6–14; *Zillmer v. Lakins* (1989), Ind.App., 544 N.E.2d 550; *Clark v. Atkins* (1986), Ind.App., 489 N.E.2d 90, *reh'g denied, trans. denied.* The court which has exclusive jurisdiction may, in its discretion, decline to exercise its jurisdiction if it determines a different forum is in a better position to entertain the litigation. I.C. 31–1–11.6–7(a); *Clark,* 489 N.E.2d 90.

■ Section 14 of the UCCJA (codified in Indiana as I.C. 31–1–11.6–14 and in Tennessee as T.C.A. 36–6–203) governs modification of custody decrees by other states:

(a) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction.

When modification of a custody order is sought in a state other than the one from which it issued, the second state's court must first establish a) either the court from which the order originated does not now have jurisdiction or b) the originating court has jurisdiction but has declined to exercise it. Only after it is determined that the court of the originating state does not have jurisdiction or declines to exercise jurisdiction are the factors determining jurisdiction found in I.C. 31–1–11.6–3, including the "home state" test, applicable. Here, the DeKalb court had continuing jurisdiction and there is no indication that it declined to exercise that jurisdiction. Therefore, we do not reach Mother's argu-

---

**2.** Indiana's enactment of the UCCJA is actually the Uniform Child Custody Jurisdiction Law.

ment that under the "home state" test, the Wilson court would have jurisdiction.

■ The DeKalb court entered the original child custody decree in this case and the Father remained in DeKalb County. As part of the original custody decree, the parties agreed the DeKalb court would retain jurisdiction unless the parties agreed otherwise. There is no indication that the DeKalb court declined to exercise its jurisdiction in favor of the Wilson court. We therefore find that the DeKalb court had subject matter jurisdiction.

■ Mother also argues that the De-Kalb court forfeited its jurisdiction by failing to provide her notice as required by the PKPA, 28 U.S.C. 1738A(e),[3] before granting Father's request for emergency temporary custody. Therefore, according to Mother, the court had no jurisdiction when it entered an order on Father's petition for permanent custody. She argues:

> under the [Parental Kidnapping Prevention] Act, the DeKalb Circuit Court would have lost any modification jurisdiction it may still have had because of the DeKalb Circuit Court's failure to comply with the notice requirements of the [PKPA], which preempts the Indiana Child Custody Jurisdiction Act under the supremacy clause. Under the unclean hands provision of the PKPA, 28 U.S.C.A. 1738A, Judge Cherry's ex parte ruling should be declared null and void and this Court should declare Tennessee to be the home state and the most convenient forum.

Appellant's Br. 33. We agree 28 U.S.C. 1738A(e), as well as the UCCJA, requires reasonable notice and an opportunity to be heard. Here, however, the DeKalb court was acting in the face of what it determined to be an emergency. The record reflects that Father's petition alleging an emergency was filed on August 14, 1991, and the ex parte order granting Father temporary cus-

tody was made on August 16, 1991. On August 22, 1991, Mother received notice of the ex parte order which indicated that Father had requested permanent custody.[4] R. 49. Under the circumstances of this case, that is, an allegation of an emergency where each party lives in a different state, this notice can be considered reasonable. The ex parte order was temporary. Mother had personal notice and an opportunity to be heard before the court made a determination on permanent custody.

In summary, the DeKalb court, the court from which the first custody order originated, retained jurisdiction here.

### *I.C. 31–1–11.5–23*

Mother argues the DeKalb court committed reversible error by failing to comply with I.C. 31–1–11.5–23(a), which requires the court to give custody proceedings priority setting. Father filed his petition for temporary and permanent custody on August 14, 1991. By ex parte order dated August 16, the court granted Father's request for temporary custody after considering a letter from the children's psychiatrist and questioning the children. This order stated that hearing "will be set at the request of either party." R. 51. Mother received notice of the ex parte order on August 22. On September 5, 1991, Father requested a hearing date be set. The court set a hearing on Father's petition for permanent custody for December 1 and 2, 1992, fifteen months after the ex parte order was entered. It was not until five months after the court set a hearing date, on March 5, 1992, that Mother filed her "Motion for Appointment of Special Judge and/or Acceleration of Trial Date." In response to this motion, the court, in a letter to Mother's attorney stated:

> I do not have even one day available on the Court calendar prior to the December 1

---

**3.** 28 U.S.C. 1738A(e) provides:

> Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

**4.** Father's "Emergency Petition for Temporary Care, Custody and Control of the parties Minor Children by Petitioner, Without Notice; Petition for Rule to show Cause as against Respondent; and Petition for Modification of Custody of the Minor Children of the Parties," R. 36–46, does not contain a certificate of service. However, Mother does not argue that she did not receive notice of Father's petition.

and 2, 1992 scheduled hearing. We are a busy Court with a congested calendar. Our Court calendar is filled with scheduled trials for not only 1992 but also 1993 and I presently have a list of sixteen (16) multiple day jury trials awaiting scheduling on the Court calendar for 1994. Many settings on the calendar are third and fourth preference settings.

When I scheduled the December 1 and 2, 1992 hearing those were the first two days available on the Court calendar at that time.

If you can find a Judge who has time available on his or her calendar significantly earlier than December of 1992 and who is willing to assume jurisdiction in light of the history of the case and if Petitioner's counsel on behalf of his client would agree to that Judge then I will reconsider your request.

R. 141.

Mother asserts the trial court committed reversible error by not giving the hearing on permanent custody a priority setting. We agree.

In *Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310, this court addressed the trial court's failure to hold a hearing on a petition to modify custody until two months after the ex parte order granting Mother temporary custody:

Because child custody proceedings implicate the fundamental relationship between parent and child, Indiana courts recognize that procedural due process must be provided to protect the substantive rights of the parties. *See Hayden v. Hite* (1982), Ind., 437 N.E.2d 133, 136; *In Re Marriage of Henderson* (1983), Ind.App., 453 N.E.2d 310. The Indiana legislature has provided a fairly detailed list of procedural requirements for courts to follow in custody and modification cases. Ind.Code 31–1–11.5–20 to 24.

*Id.* at 313. In *Brown,* three procedural irregularities were found: 1) the trial court's failure to hold a hearing until two months after the ex parte order modifying custody; 2) the trial court's failure to provide Father with a report from the welfare department ten days before the hearing; and 3) the trial court's order making the children wards of the court. With regard to the timing of the hearing, the *Brown* court stated:

The first procedural irregularity was the delay between the granting of the emergency order and the hearing. Although the statute and the trial rules both make provisions for emergency orders, both recognize that such orders are to be temporary in nature and that an evidentiary hearing is to be scheduled as soon as possible. *See, e.g.,* Ind.Code 31–1–11.5–23(a) ("Custody proceedings shall receive priority in being set for hearing."); Ind.Rules of Procedure, Trial Rule 65(B) ("hearing ... shall be held at the earliest convenience of the court"). A prompt hearing is especially essential in a custody case where the parties are dueling for a child's affections and the longer a delay, the more chance one party has to influence the child. When the parent who has the opportunity to exert influence has received temporary custody in an ex parte proceeding, there is even a greater reason for having a prompt hearing.... Because a delay in custody hearing may increase the chances of a custodial parent eventually being deprived of custody, it is not reasonable for a custody hearing to follow an ex parte transfer of custody by two months.

*Id.*

As the *Brown* court demonstrates, nowhere is the adage "justice delayed is justice denied" more applicable than in the situation before us today. Father's petition was granted on August 16, 1991. At that time, the children had spent the summer with him and were due to return to their Mother. The trial court ordered Father to enroll the children in a local school until the hearing. By the time the hearing was conducted, the children had lived with Father for almost two years—a considerable amount of time in the lives of these young children. They became firmly entrenched in Father's life. Mother, on the other hand, was permitted only limited supervised visitation with her children. She was effectively removed from the children's lives for almost two years before having an opportunity to be heard. Thus, Fa-

ther had ample opportunity to influence the children while Mother was out of the picture.

 We recognize that reversal was required in *Brown* due to the cumulative effect of three procedural irregularities. We cannot say, therefore, that the *Brown* decision stands for the proposition that the two-month delay for the hearing is, standing alone, sufficient to require reversal. Nor can we say how much of a delay would be necessary to require reversal. However, based on the reasoning in *Brown*, we find that the delay of fifteen months severely prejudiced Mother's right to a hearing on continued custody so as to deny her procedural due process.

 An ex parte order is an extreme remedy which is intended to be temporary in nature. In the face of an emergency, the trial court is called upon to balance the welfare of the children against the custodial parent's right to continued custody. In order to protect the welfare of the child, the court may enter an ex parte order. To protect the relationship between the parent and the children, the court is required by statute to hold a *prompt* hearing—with notice and an opportunity to be heard—on the custody issue. Here, however, the trial court ignored this duty in the first instance when it failed to set a hearing date when it granted the ex parte order. The second error was committed when the trial court set the hearing for over fifteen months after the ex parte order. If the trial court's calendar did not permit an earlier setting, the burden was on the trial court—and not on Mother—to appoint a special judge or a judge pro tempore to conduct the hearing.

 We recognize, as pointed out by Father, that Mother delayed five months after receiving notice of the December hearing date before requesting an accelerated hearing date or the appointment of a special judge. However, Mother's delay does not relieve the trial court of its statutory duty to give the hearing a priority setting. At no time did Mother seek a continuance of the hearing date; therefore, the delay in the hearing is attributable to the trial court alone.

For the above-stated reasons, we reverse the order of the trial court granting Father permanent custody of the children. On remand, custody of the children is to be returned to Mother pending further proceedings.[5]

SHARPNACK, C.J., and RILEY, J., concur.

5. In this respect, we find the situation before us today much like the situation in which a preliminary injunction is entered before a permanent injunction. This court has held that the preliminary injunction merges into the permanent injunction. *Tomahawk Village Apt. v. Farren* (1991), Ind.App., 571 N.E.2d 1286, 1292. In the same way, the trial court's ex parte order was absorbed into the final determination on custody as both are based on allegations of substantial change in circumstances. Because we reverse the court's final determination, we return the parties to their status before the ex parte order was entered.