**Kim Dawn SPENCER, Appellant–
Petitioner,**

v.

**John J. SPENCER, Appellee–Respondent.**

**No. 09A05–9703–CV–117.**

Court of Appeals of Indiana.

Aug. 18, 1997.

Rehearing Denied Oct. 10, 1997.

Florence Anne Briggs, Flora, for Appellant–Petitioner.

Jeffrey D. Stanton, Stanton & Enyeart, Logansport, for Appellee–Respondent.

BARTEAU, Judge.

Kim Dawn Spencer appeals a trial court order modifying a child custody agreement. She raises three issues, which we consolidate and restate as:

1. Whether a delay of 18 months between the time of a party's motion to terminate a temporary agreed order as to custody and the court's final ruling modifying custody deprived the non-custodial parent of due process?

2. Whether there was a "substantial change" in one or more of the statutory factors which must be satisfied before a custody order can be modified?

We affirm.

### FACTS

Kim Dawn Spencer and John J. Spencer were married on November 7, 1987. The couple had one child, Ethan Spencer, who was born on November 12, 1989. The marriage was dissolved on August 26, 1991. The dissolution decree provided that Kim would have custody of the child, with John to have reasonable visitation.

On May 1, 1995, Kim and John agreed to modify the custody provision of the dissolution decree. The agreed order stated that since the entry of the dissolution decree, there had been a substantial change in circumstances which warranted a temporary modification of custody. The parties agreed to share legal custody of Ethan, with John to have physical custody of the child and Kim to have reasonable visitation. On December 31, 1995, Kim and John were to decide whether to continue the temporary agreement, make it permanent, or terminate it.

On July 21, 1995, Kim petitioned to terminate the agreed order, and on August 1, 1995, John petitioned to modify custody to give him permanent custody of the child. On November 17, 1995, the parties filed an agreed entry providing that Kim was to have visitation with the child every other weekend and at various specified times on every day of each week. Five days later, John filed a petition to maintain the status quo as to custody, because Kim had taken the child to Florida on a vacation trip without John's approval and during Ethan's school term.

After a change of judge on John's motion and a series of reschedulings due to requests for continuances by both parties, hearings were held on January 19 and 29, 1996, and September 10, 1996. On December 5, 1996, the trial judge awarded physical custody of the child to John, with Kim and John to have permanent joint custody and Kim to have substantial visitation. The court noted that Kim had enjoyed substantial visitation during the time John had physical custody, and that the time in John's custody seemed to have stabilized the child.

### STANDARD OF REVIEW

A child custody determination falls within the sound discretion of the trial court, and its determination will not be disturbed on appeal absent a showing of abuse of discretion. *In Re Guardianship of R.B.*, 619 N.E.2d 952, 955 (Ind.Ct.App.1993). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* We do not reweigh evidence nor reassess witness credibility, and we consider only the evidence which supports the trial court's decision. *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind.Ct.App.1996).

### DUE PROCESS

The trial court's final order changing custody was issued about 18 months after

Kim filed her original petition to terminate the order granting temporary custody to John. Kim contends the delay deprived her of procedural due process, because it effectively gave John physical custody of Ethan for a year and a half, and because the length of time the child was in John's custody was one basis for the court's award of permanent physical custody to John.

In some circumstances, a delay in the resolution of a custody dispute can have the effect of denying due process to a non-custodial parent:

> A prompt hearing is especially essential in a custody case where the parties are dueling for a child's affections and the longer a delay, the more chance one party has to influence the child. When the parent who has the opportunity to exert influence has received temporary custody in an ex parte proceeding, there is even a greater reason for having a prompt hearing.... Because a delay in custody hearing may increase the chances of a custodial parent eventually being deprived of custody, it is not reasonable for a custody hearing to follow an ex parte transfer of custody by two months.

*Brown v. Brown,* 463 N.E.2d 310, 313 (Ind. Ct.App.1984).

In *Brown,* a mother obtained an emergency *ex parte* order transferring custody of her two minor daughters to her. Although the father was not present when the order was granted, and he twice sought to have it dissolved, no hearing was held for two months. After the hearing, custody was transferred to the mother, with whom the daughters had been staying since the emergency order, in part because the daughters had expressed a desire to remain with the mother. We found that the delay, in conjunction with two other serious procedural irregularities,[1] had the effect of denying the father due process. *Id.* at 314.

We also found that delay in holding a permanent custody hearing deprived a parent of due process in *Wilcox v. Wilcox,* 635

N.E.2d 1131 (Ind.Ct.App.1994). There, the father filed an ex parte emergency petition for temporary custody of his children. His request was granted, and a hearing on the custody modification was not held for fifteen months. The court then modified custody in favor of the father. During the period between the ex parte emergency petition and the hearing, the mother had only limited supervised visitation, and she was effectively removed from her children's lives for almost two years before she had an opportunity to be heard. Thus, the father had ample opportunity to influence the children while the mother was out of the picture.

In *Wilcox* and *Brown,* the noncustodial parent was denied both meaningful contact with the child and a timely day in court. That was not the case here, and the passage of time before the final custody determination did not deprive Kim of due process. Kim and John shared legal custody of the child at all times. During the entire time when John had physical custody of Ethan, Kim had substantial contact with the child—in fact, she had the opportunity to see Ethan almost daily. We also note that part of the delay in the final custody adjudication was caused by Kim's request for a continuance. It was not, as in *Wilcox,* attributable to the court alone. 635 N.E.2d at 1137. Nor was it a situation like that in *Brown* or *Wilcox* where the parent with physical custody had a greater opportunity to influence the child while the parent without physical custody was effectively removed from the child's life. Because the delay in the Spencers' final custody adjudication was caused in part by Kim, and because Kim was not prejudiced by the delay as were the noncustodial parents in *Brown* and *Wilcox,* we find no deprivation of due process.

## SUBSTANTIAL CHANGE IN STATUTORY FACTORS

A court may not modify a child custody order unless the modification is in the best

---

1. The father was not given the statutorily-required access to a welfare department report,

and the trial court involved the welfare depart-

interests of the child,[2] and there is a substantial change in one or more of the factors a court is to consider in determining custody initially. Ind.Code § 31–1–11.5–22(d). Those factors include

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community;

(6) the mental and physical health of all individuals involved; and

(7) evidence of a pattern of domestic violence by either parent.

Ind.Code § 31–1–11.5–21(a).

The trial court found that

[I]n the beginning, both of the parties were unstable and living in a somewhat flexible environment. This has changed and now both appear to be much more stable.

The Father has had custody for sometime and this arrangement appears to have stabilized the child, and therefore, the Court will not disturb this arrangement. Also, the Mother is receiving substantial visitation which is also approved by this Court.

(Record at 105.)

The record contained ample evidence from which the trial court could have found a substantial change in one or more of the statutory factors. The trial court decision focused on the increased stability in Ethan's life after his father took physical custody of him, and we have recognized that the child's interest in a stable home environment is an appropriate basis for a custody modification order, *see Wallin,* 668 N.E.2d at 261.

Between the date of the divorce decree and the date of the modification being appealed here, Kim lived in at least nine residences, and she stayed with at least four different men during that time. The court heard evidence that one of the men had abused Ethan by striking him on at least three occasions. The parties' original agreement to temporarily transfer physical custody of Ethan to his father was precipitated by a change in Kim's work schedule from a daytime job as a bank teller to a night shift factory job. There was evidence that after the job change, the greater part of Ethan's days were typically spent in the care of a sitter, a grandparent, or sometimes unsupervised at home while Kim was sleeping.

By contrast, evidence was presented that John's life had stabilized significantly and that he could provide the stability that had been lacking in Ethan's life. John remarried and purchased a home in the country, and obtained a job which enabled him to be with his family four days a week. John's wife works days, while John works evenings, so Ethan would seldom have to stay with a sitter. The evidence of increased stability in Ethan's life provides a sufficient basis for the trial court's decision.

## CONCLUSION

Kim was not deprived of due process by virtue of the passage of time before the trial court's final order, and the trial court did not abuse its discretion in finding that the evidence demonstrated a substantial change in the statutory factors which govern custody modification. Its decision is affirmed.

RUCKER and GARRARD, JJ., concur.

---

ment in the custody arrangement without statutory authorization.

2. Because Kim does not address the "best interest" requirement on appeal, we do not decide whether that requirement was satisfied by the evidence.