Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**BRYAN L. CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**ANDREA L. CIOBANU**
Ciobanu Law, P.C.
Indianapolis, Indiana

**FILED**

May 31 2012, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF N.B.: | ) | |
| | ) | |
| K.B., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1111-JP-495 |
| | ) | |
| A.B., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
The Honorable John Sedia, Magistrate
Cause No. 45D06-0505-JP-268

**May 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant K.B. ("Mother") appeals the trial court's order modifying custody of N.B. to Appellee A.B. ("Father"). On appeal, Mother claims that the trial court erred in modifying custody because its findings and conclusions are clearly erroneous. Concluding that the trial court acted within its discretion in modifying custody to Father, we affirm.

## FACTS AND PROCEDURAL HISTORY

On September 7, 2000, Mother gave birth to N.B. out of wedlock. On July 26, 2005, paternity of N.B. was established in Father. Father was ordered to pay child support and was granted parenting time with N.B. Father paid child support and exercised parenting time, although the parties disagree as to the extent and the regularity.

In November of 2010, Mother moved to her mother's home in Punta Gorda, Florida with N.B. and N.B.'s older half-sibling without giving prior notice to Father or the trial court. Mother claimed that she moved to Florida to care for her ailing step-father. On November 16, Father filed an objection to Mother's relocation. The trial court scheduled a preliminary hearing on Father's objection for March 1, 2011. By January of 2011, Mother "framed the intention to remain in Florida" and claimed that she informed "everybody" of her intent. Tr. p. 55. On March 1, 2011, the trial court appointed a guardian ad litem ("GAL") and ordered that Father should have parenting time with N.B. in Indiana over spring break.

Within four months of moving to Florida, Mother met, dated, and moved in with C.G., a retired member of the United States military. C.G. and Mother moved to Tampa while N.B. remained with Mother's mother in Punta Gorda. N.B. would visit Mother in Tampa on the weekends. Mother claimed that she and C.G. were engaged to be married, but C.G. told the

2

GAL that he did not know if it was going to be a long-term relationship with Mother and he "planned on taking his time." Appellant's App. 51.

On June 17, 2011, Mother filed a "Notice of Intent to Relocate" in which she informed the trial court that she intended to move her principal residence to Tampa, Florida. On June 29, Mother filed a "Verified Petition for Modification of Child Support and Determine Arrearage" in which she claimed that a substantial change in circumstances existed warranting a modification of the current support order and that Father was in arrears of his child support obligation. Father acknowledged that he was in arrears of his child support obligation. On July 6, 2001, Mother filed an "update" to her notice of intent to relocate in which she provided the specific address to which she intended to relocate.

On July 8, 2011, Father filed an objection to Mother's relocation and requested that the trial court modify the prior custody order. The trial court conducted a hearing on Father's objection on October 18, 2011. At the hearing, the trial court heard testimony from the parties and other interested witnesses, as well as the GAL, who submitted his report to the court for consideration. On October 21, 2011, the trial court issued an order modifying custody to Father after concluding that the change in custody would be in N.B.'s best interest. This appeal follows.

## DISCUSSION AND DECISION

### A. Standard of Review

On appeal, the sole issue is whether the trial court abused its discretion by granting Father's motion to modify custody.

The modification of a custody order lies within the sound discretion of the trial court. *Spencer v. Spencer*, 684 N.E.2d 500, 501 (Ind. Ct. App. 1997), *reh'g denied*. "We review custody modifications for abuse of discretion, with a 'preference for granting latitude and deference to our trial judges in family law matters.'" *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993)). Our supreme court explained the reason for this deference in *Kirk*:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

*Id*. (citing *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "Therefore, '[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id*. (quoting *Brickley*, 247 Ind. at 204, 210 N.E.2d at 852).

*Bettencourt v. Ford*, 822 N.E.2d 989, 997 (Ind. Ct. App. 2005).

Where, as apparently happened here, the trial court enters specific findings of fact and conclusions *sua sponte*, we apply the following two-tiered standard of review: whether the evidence supports the findings, and whether the findings support the judgment. *Fowler v. Perry*, 830 N.E.2d 97, 102 (Ind. Ct. App. 2005).

> The trial court's findings and conclusions will be set aside only if they are clearly erroneous, i.e., when the record contains no facts or inferences supporting them. [*Learman v. Auto Owners Ins. Co.*, 769 N.E.2d 1171, 1174 (Ind. Ct. App. 2002), *trans. denied*]. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id*. We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Clark v. Crowe*, 778 N.E.2d 835, 839-40 (Ind. Ct. App. 2002).

4

*Id*.

## B. Custody Modification

Initially, we acknowledge that Mother claims that the trial court's findings are clearly erroneous because the trial court erroneously relied upon the nonexclusive list of factors in Indiana Code section 31-14-13-2, which relates to an initial custody determination, rather than those listed in Indiana Code section 31-17-2.2-1(b), which relates to a custody modification following the relocation of one parent. However, we cannot agree that the trial court erred in considering these factors. Indiana Code section 31-17-2.2-1(b) provides that the trial court should consider "other factors affecting the best interest of the child" and these "other factors" include the nonexclusive list of factors set forth in Indiana Code section 31-14-13-2. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1256-57 (Ind. 2008) (providing that Indiana Code chapter 31-17-2.2 incorporates each of the factors listed in Indiana Code section 31-17-2-8, which is identical to Indiana Code section 31-14-13-2 except for the fact that it relates to custody determinations generally, rather than being limited to those made following a paternity determination). As such, the trial court did not err in considering these factors in addition to those listed in Indiana Code section 31-17-2.2-1(b).

Moreover, while the trial court's order suggests that it only considered the factors set forth in Indiana Code section 31-14-12-2, it did make findings that are pertinent to a determination of whether a change in custody was proper following Mother's move to Florida. Indiana Code chapter 31-17-2.2 relates to a modification of a custody arrangement following relocation by the custodial parent. Indiana Code section 31-17-2.2-1(b) provides a

list of factors that a trial court should consider when determining whether to modify a custody order. These factors include (1) the distance involved in the proposed change of residence; (2) the hardship and expense involved for the nonrelocating parent to exercise parenting time; (3) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable parenting time, including consideration of the financial circumstances of the parties; (4) whether there is an established pattern of conduct by the relocating parent, including actions by the relocating parent to either promote or thwart the nonrelocating parent's contact with the child; (5) the reasons provided by the parent seeking relocation and the parent opposing the relocation of the child; and (6) other factors affecting the best interests of the child. Indiana Code § 31-17-2.2-1(b). In addition, the trial court may consider the proposed relocation itself as a factor in determining whether to modify a custody order. Indiana Code § 31-17-2.2-2.

Here, the trial court's findings mention the reasons provided by Mother for moving to Florida, the distance of the move, *i.e.* from Lake County, Indiana to Punta Gorda, Florida; the limited financial resources of the parties; and numerous factors relating to N.B.'s best interests. The trial court found that N.B. loves and interacts well with both of the parties as well as her half-siblings, her maternal grandparents, and Father's girlfriend and her mother. The trial court further found that Father would provide N.B. with stable housing where she would be surrounded by a loving and caring support system and noted that while in Florida, N.B. lived with maternal grandparents during the week and merely visited Mother at her home in Tampa on the weekends.

6

In addition, the trial court noted that both Mother and Father have troubling backgrounds, but found that Father currently provides a more stable living environment. In support of this finding, the trial court noted that Father "got in serious trouble when he was younger" but is not currently facing legal problems and is engaged in a stable seven-year relationship. Appellant's App. p. 17. Mother, on the other hand, was involved in numerous ongoing legal disputes at the time she moved to Florida, had moved numerous times in the years preceding the instant custody determination, and had married a convicted sex offender while he was in prison so that "things would go easier [for him] in prison." Appellant's App. p. 15. Moreover, at the time of the hearing, Mother claimed to be engaged to C.G., who she met and moved in with within four months of moving to Florida. The trial court further noted that while Mother claims that she and her "current paramour" plan to marry, C.G. told the GAL that "he didn't know if it was going to be a long term relationship with [Mother] and planned on 'taking his time.'" Appellant's App. p. 16.

In addition to these findings, the record demonstrates that Mother had engaged in behavior that seemed to be aimed at thwarting Father's contact with N.B. N.B. told the GAL that Mother forced her to copy letters, which were written by Mother and N.B.'s older half-sibling, indicating that she did not wish to visit Father in Indiana. Father also testified that Mother attempted to make it difficult for him to communicate with N.B. over the internet after she moved to Florida.

Upon review, we conclude that each of the above-stated findings is supported by the record, and as such, the findings are not clearly erroneous. The trial court's findings support

7

its judgment modifying custody to Father. Mother's claims effectively amount to an invitation for this court to re-judge the credibility of the witnesses and to reweigh the evidence, which, again, we will not do. *See Fowler,* 830 N.E.2d at 102 (citing *Clark*, 778 N.E.2d at 839-40). Accordingly, we conclude that the trial court acted within its discretion in modifying custody to Father.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.