## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2015, 6:43 am

CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

Christopher C. Crawford
Elkhart, Indiana

**ATTORNEY FOR APPELLEES**

Lisa Gilkey Schoetzow
Thorne Grodnik, LLP
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Guardianship of M.M. et al

Melissa Miller,

*Appellant,*

v.

FaithAnn Breden and Richard Breden,

*Appellees.*

April 28, 2015

Court of Appeals Case No. 20A05-1409-GU-441

Appeal from the Elkhart Superior Court

The Honorable Evan S. Roberts, Judge

Trial Court Cause No. 20D01-1005-GU-39

**Robb, Judge.**

# Case Summary and Issues

[1] Melissa Miller ("Mother") is the mother of two children, M.M., born in 2006, and J.M., born in 2008. In 2010, a guardianship was established over the children and they were placed in the custody of the guardians, Richard Breden and FaithAnn Breden (collectively referred to as "Guardians"). In 2012, the children were returned to Mother's custody but the guardianship remained open. Ultimately, M.M. was returned by agreement to the custody of Guardians while J.M. remained in Mother's custody. In 2014, Mother was found in contempt on a motion for rule to show cause filed by Guardians. At a review hearing on that contempt finding, the trial court ordered that J.M. be immediately placed in the temporary custody of Guardians and set an evidentiary hearing for full consideration of a change of custody.

[2] Mother appeals the temporary change of custody, raising two issues for our review: 1) whether her due process rights were violated when the trial court immediately removed J.M. from her custody and did not set an evidentiary hearing for approximately three months in the future, and 2) whether the trial court abused its discretion in temporarily changing custody of J.M. Concluding Mother's due process rights were not violated and the trial court did not abuse its discretion in entering a temporary change of custody order, we affirm.

# Facts and Procedural History

[3] The facts as we are able to glean them from the Chronological Case Summary ("CCS") and the transcript of the review hearing[1] are these: Richard Breden is Mother's father, and FaithAnn Breden is his wife. The Bredens were appointed guardians of J.M. and M.M. in 2010 in conjunction with Mother's pending divorce from the children's father.[2] Mother and Guardians have a contentious relationship which has resulted in multiple appearances in court since the guardianship was established. At the review hearing, the trial court summarized the state of the case as follows:

> So we have two children with one being with [Guardians] and one being with [Mother]. We've had very little success over the years with cooperative exchanges for parenting time, we've had transportation issues, we've had 19 pages of chronological case summary here, and it's clear to me that very few people seem to be listening and following court orders. . . . I'll also note for the record that I don't seem to be making any headway towards getting the case resolved, stopping the fighting, which is commonly associated with this case. There needs to be a stop.

Transcript at 24-25.

[4] On June 5, 2014, Guardians filed a verified motion for rule to show cause against Mother. Neither that motion nor the order ruling on it are included in

---

[1] Mother's Appendix includes only the CCS, the trial court's order being appealed, a guardian ad litem's report that was submitted to the trial court in advance of the hearing, and excerpts from the transcript of the review hearing. This makes it difficult to gain a full picture of these proceedings which began in 2010. Further, Indiana Appellate Rule 50(F) states that "parties should not reproduce any portion of the Transcript in the Appendix" because the transcript is transmitted to the court in full from the trial court clerk.

[2] The children's father is now deceased.

the record, but from the information contained in the CCS, it appears that the motion alleged Mother was not in compliance with court orders regarding parenting time. On June 16, 2014, Mother filed a notice of intent to relocate to Florida. At a June 23, 2014, hearing on the motion for rule to show cause, Guardians filed an objection to Mother's notice of relocation and a request to modify child custody and parenting time.[3] The trial court found Mother in contempt and sentenced her to fifteen days at the county jail, with jail time suspended pending a review hearing regarding her compliance with court orders. In addition, the trial court ordered that no party was to relocate and neither minor child was to be removed from the county pending further order of the court. Finally, the trial court admonished the parties "that there are to be no discussions concerning this matter with the children and they are prohibited from making disparaging comments about one another. Parties are further admonished to fully comply with all Court orders." Appellant's App. at 10. A review hearing was scheduled for August 18, 2014.

[5] The children's Guardian ad Litem ("GAL") filed a report with the court in advance of the August 18, 2014 review hearing. The GAL noted several recent incidents reported by Guardians that reflected poorly on Mother. The GAL also noted that Mother has historically been unable or unwilling to hold a job or independently maintain stable housing for herself and her children and

---

[3] The request to modify custody also does not appear in the record, but from context, it appears it was a request to change the custody of J.M. from Mother to Guardians.

"continues to make very poor parenting choices . . . . She will not provide a stable home for herself and her sons and continues to make poor choices regarding who she allows into her life." Appellant's App. at 23. Accordingly, the GAL recommended that Guardians

> retain permanent guardianship of [M.M.]. [J.M.] should also be placed in their home and they should have permanent guardianship of him also. [Mother] should have supervised parenting time . . . and a No Contact order should be put in place so she cannot disrupt the [Guardians'] home . . . . [Mother] needs to get and maintain full time employment and get a home of her own before any extended parenting time will take place.

*Id.*

[6] Mother and Guardians each appeared by counsel at the review hearing. The GAL was also present. The trial court noted at the outset of the review hearing that it had received and reviewed the GAL's report. The parties' positions were summarized by their counsel, and no testimony was taken. Guardians requested that the trial court adopt the GAL's recommendation and place J.M. in their custody. Mother provided information from J.M.'s school about her involvement there, asserted that she had obtained a job that she was to start that evening, and argued that Guardians' home had its share of drawbacks as well. Although her counsel asserted there was no emergency which would necessitate a change in custody without an evidentiary hearing, he also acknowledged that "[t]here is never going to be [a] situation in this case where anything is ever

going to change in regards to this matter."[4] Tr. at 8. The GAL reiterated her concerns that Mother has not been able to maintain stable employment in the past and wondered how long her new job would last. The GAL noted that Mother

> continues to live off the grace and favor of other people. That does not make a stable home for a child. . . . [J.M.] is being moved from place to place to place. . . . I want to see [Mother] be able to provide a home for herself and the boys, to be able to meet their needs, medically, food, clothing, shelter. That's not possible at this point. . . . I'm very concerned about [J.M.] He needs stability. I don't know how else to give that to him at this point.

Tr. at 14-15.

[7] At the conclusion of the hearing, the trial court noted that it was "quite familiar with the case, I read what's filed with the court so I have a pretty good idea what's going on here. . . . This is going to stop and today is that day." Tr. at 28. Accordingly, the trial court found Mother was entitled to an evidentiary hearing and set one for November 21, 2014. "However, as a temporary order what we're going to do today is the following: Effective immediately, [J.M.] will be placed back into the [Guardians'] care without prejudice to reconsideration based upon what I have in the [GAL's] report and the arguments of counsel." Tr. at 25. The trial court followed up its ruling from the bench with a written order stating custody of J.M. was temporarily and immediately placed with

---

[4] Counsel's remark echoes the trial court's statement quoted above, and is also reflected in the GAL's statement during the hearing that she does not "know how to make this case move forward. We just seem to be treading water . . . ." Tr. at 14-15.

Guardians "[b]ased on Mother's unstable employment history, frequent changes in living situation including a recent eviction and instability for the minor child in her custody . . . ."[5] Appellant's App. at 20. Mother now appeals.

# Discussion and Decision

## I.  Due Process

[8]  Mother contends the trial court violated her due process rights in immediately changing custody of J.M. and failing to set an evidentiary hearing sooner than three months out.

[9]  "The parent-child relationship is one of the most valued relationships in our culture . . . [a]nd a parent's interest in the upbringing of their child is perhaps the oldest of the fundamental liberty interests recognized by the courts." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citations and alterations omitted). "[D]ecisions regarding marriage, family life, and raising children are of basic importance in our society and are rights protected by the Fourteenth Amendment from the State's unwarranted interference." *C.A. v. Indiana Dep't of Child Servs.*, 15 N.E.3d 85, 93 (Ind. Ct. App. 2014) (citing *M.L.B. v. S.L.J.*, 519 U.S. 102, 116-17 (1996)).

---

[5] Mother's parenting time was originally taken under advisement, but on August 26, 2014, the trial court ordered that she have supervised parenting time with the children awaiting the evidentiary hearing.

"Due process" has never been defined, but it embodies the concept of "fundamental fairness." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court stated that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (citation and quotation omitted).

In support of her position, Mother cites two cases, which she claims are very similar to this situation. In *Brown v. Brown*, 463 N.E.2d 310 (Ind. Ct. App. 1984), this court held that a delay of two months between the granting of a temporary ex parte order immediately transferring custody of children from father to mother and a full custody hearing was one of several procedural irregularities that combined to constitute an abuse of the trial court's discretion. *Id.* at 313 ("Because a delay in custody hearing may increase the chances of a custodial parent eventually being deprived of custody, it is not reasonable for a custody hearing to follow an *ex parte transfer of custody* by two months.") (emphasis added). And in *Wilcox v. Wilcox*, 635 N.E.2d 1131 (Ind. Ct. App. 1994), this court held that a delay of fifteen months between the granting of an emergency ex parte order immediately transferring custody of children was a significant enough delay to alone be a denial of due process. *Id.* at 1136-37 ("In order to protect the welfare of the child, the court may enter an ex parte order. To protect the relationship between the parent and the children, the court is required by statute to hold a *prompt* hearing—with notice and an opportunity to be heard—on the custody issue.") (emphasis in original).

[12] Both *Brown* and *Wilcox* are distinguishable from the case at bar because they involved *ex parte* orders changing custody. The fact that the parent in each of those cases was denied an opportunity to be heard on the change of custody at all until after the passage of some amount of time was integral to each decision. Here, Guardians filed a request to modify custody in advance of the hearing, and the GAL filed a report summarizing her recommendations regarding custody prior to the hearing. Although it may be that the review hearing was not set for the specific purpose of deciding custody issues, it could not have been a surprise to Mother that custody would be addressed.[6] At the hearing, Mother was represented by counsel and heard by the trial court regarding a change in custody before the court entered its temporary order. Thus, we do not believe it is appropriate to consider the trial court's action in this case to be an ex parte order. *See Stratton v. Stratton*, 834 N.E.2d 1146, 1147-48 (Ind. Ct. App. 2005) (noting that, where custody was temporarily modified following the first day of a two-day trial at which both parties were present, it was not an ex parte order and holding that a delay of seven months in holding the second day of trial did not constitute a denial of due process).

[13] The trial court here recognized the need for a full evidentiary hearing on this matter and set a date for that hearing before the parties left the courtroom that

---

[6] Because we do not have the transcript of the June 23, 2014 hearing, we do not know precisely what matters the trial court set the August 18, 2014 hearing to review. That the GAL filed a report with the court in the interim concerning her recommendations for custody could be an indication that custody was one of those matters.

day. Admittedly, that hearing was set three months into the future. But as *Wilcox* recognized, *Brown* does not stand for the proposition that a delay of two months between an ex parte order changing custody and a full hearing is *necessarily* too long, as the cumulative effect of several procedural regularities compelled the result in *Brown*. 635 N.E.2d at 1137. And the delay in *Wilcox* which the court held "severely prejudiced" the parent's right to a hearing, *id.*, was five times as long as the delay here. The length of the delay in this case is not per se unreasonable.

[14] Further, the three month delay in holding a hearing in this case did not prejudice Mother. As her counsel acknowledged, "the idea of a guardianship is for the parties to be able to work together to the extent possible for [Mother] to get into a position to be able to have the care and custody of her children." Tr. at 12. The review hearing leading up to the trial court's temporary custody order focused on several areas of Mother's life where she was not in that position—her housing and employment situations in particular. Setting an evidentiary hearing three months into the future would give Mother an opportunity to address those areas and show the court that she was in a position to have custody of her children before the trial court made a permanent ruling on Guardians' request to modify custody.

[15] In sum, Mother had notice that custody was at issue in this case, the trial court's order transferring custody of J.M. to Guardians was temporary, and Mother had an opportunity to be heard by counsel before a change of custody was ordered with assurances of an opportunity to be heard more fully in short

order. We thus conclude that the trial court's temporary order did not violate Mother's due process rights.

## II. Temporary Modification of Custody

Mother also contends the trial court abused its discretion in modifying custody when there was no showing of an emergency and the change was based on a one-sided GAL report. We review findings and orders in a guardianship proceeding for an abuse of discretion. *In re Guardianship of Hollenga*, 852 N.E.2d 933, 937 (Ind. Ct. App. 2006) (citing Ind. Code § 29-3-2-4(a)). We also review custody modifications for an abuse of discretion with a "preference for granting latitude and deference to our trial judges in family law matters." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Hollenga*, 852 N.E.2d at 937.

In considering a natural parent-third party custody dispute, there is a presumption that the natural parent should have custody of the child. *In re Guardianship of L.L.*, 745 N.E.2d 222, 230 (Ind. Ct. App. 2001), *trans. denied*. The third party bears the burden of overcoming this presumption by clear and convincing evidence, such as evidence of the parent's present unfitness. *Id.* If the presumption is overcome, *then* the court engages in a consideration of the statutory modification factors and a "best interests" analysis. *Id.* at 231; *see* Ind. Code § 31-14-13-6. Keeping in mind that this was a *temporary* change in

custody "without prejudice to reconsideration" following a full evidentiary hearing, tr. at 25, we cannot say the trial court abused its discretion here.

[18] It appears to be true that the details in the GAL report were provided to the GAL by Guardians. However, leaving aside the more salacious allegations made by Guardians and included in the GAL's report, there seems to be no dispute regarding the GAL's report that Mother had moved frequently with J.M. and did not have steady employment. Mother had been found in contempt of court for her actions with regard to parenting time as recently as two months before this hearing. Moreover, this case has been before the trial court for more than four years, and the court noted it was "quite familiar" with the case and the dynamics of the situation. Tr. at 28; *see In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014) (noting that we grant considerable deference to a trial court's decision in family law matters because "we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the [parties] and their relationship with [the] children.") (quotations omitted). On an emergency, temporary basis, the trial court could have reasonably found based on the facts and circumstances before the court that Mother was presently unfit to care for J.M. and that it was in J.M.'s best interests to be immediately placed with Guardians pending a full evidentiary hearing.[7]

---

[7] Notwithstanding the temporary change in custody, at such evidentiary hearing, it remains Guardians' burden to rebut the presumption that Mother is the appropriate person to have the custody of J.M. *Cf. K.I.*,

# Conclusion

Mother's due process rights were not violated by the manner in which the trial court entered its temporary change of custody order or in the setting of an evidentiary hearing.  Further, the trial court did not abuse its discretion in temporarily changing the custody of J.M. from Mother to Guardians. Accordingly, the trial court's temporary order is affirmed.

Affirmed.


Bailey, J., and Brown, J., concur.

---

903 N.E.2d at 460 ("Even when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent . . . .") (quotation omitted).  If Guardians can rebut the presumption, then the trial court must examine the custody situation as it existed prior to the temporary order in determining whether the standard for modification of custody has been met. *See Walker v. Chatfield*, 553 N.E.2d 490, 497 (Ind. Ct. App. 1990) ("Temporary custody merely preserves the status quo until a final determination based on all the facts can be made.").