**B & L APPLIANCES AND SERVICES, INC., Appellant–Defendant,**

**v.**

**Nicholas McFERRAN and Elizabeth McFerran, Appellees–Plaintiffs.**

**No. 27A05–9809–CV–445.**

Court of Appeals of Indiana.

June 9, 1999.

---

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, Attorney for Appellant.

Joe Keith Lewis, Marion, Attorney for Appellees.

## OPINION ON REHEARING

MATTINGLY, Judge.

On February 16, 1999, this court issued its memorandum decision, 708 N.E.2d 925, affirming the trial court's denial of B & L Appliances and Services, Inc.'s (B & L) mo-

tion for relief from default judgment in favor of Nicholas and Elizabeth McFerran (the McFerrans). In our decision, we addressed a single issue: whether the trial court abused its discretion in refusing to set aside the default judgment.

B & L now petitions for rehearing, insisting that our decision "omits and ignores" an agreement between the parties and is contrary to law. Appellant's Petition for Rehearing at 1. It also contends our decision amounts to "a bad lawyer joke" and fuels negative perceptions about the legal profession. *Id.* at 4. We address each of B & L's contentions in turn.

### FACTS AND PROCEDURAL HISTORY

On December 13, 1995, Nicholas McFerran fell on a sidewalk in front of a building owned by Kem Mart Investors (Kem Mart), part of which building had been leased to B & L. Counsel for the McFerrans submitted settlement brochures and demands to Auto Owners Insurance Company (Auto Owners), the insurer for B & L, and to American States Insurance, the insurer for Kem Mart.

The McFerrans filed a complaint for damages against B & L and Kem Mart on December 9, 1997. On December 12, 1997, the McFerrans' counsel sent a letter to both insurers, which stated that:

> Moreover, my clients have authorized me to instruct each of the carriers that we will not attempt to obtain a default judgment against your insureds. We pledge to both carriers that if this matter cannot be resolved between the parties, that we will give each of you written notice that answers should be filed (we will give you a minimum 30[sic] window to hire counsel after our written notification to you).

R. at 58.

Settlement discussions were held on December 20, 1997. On December 29, 1997, the McFerrans' counsel sent a letter to both insurance companies rejecting their joint offer. That letter stated:

> It is obvious that the parties are miles apart concerning the settlement of this claim based upon our demand and the offer of $20,000.00. Our clients reject this offer. Moreover, our clients reject any structured settlements at this time. We will entertain any serious offers on your parts. Please allow this letter to serve as written notice to you that we are prepared to go forward with the lawsuit. If no serious offers are going to be made, then we would expect answers to our complaint for damages to be filed within thirty days of this letter.
>
> I look forward to hearing from the both of you.

*Id.* at 34.

On December 30, 1997, counsel for Kem Mart filed an appearance. On January 12, 1998, counsel for the McFerrans contacted the adjuster for Auto Owners, who was handling the claim for B & L, and reduced the plaintiffs' demand. Neither B & L nor Auto Owners made any further settlement offers. Although telephone calls were exchanged, counsel for the McFerrans and the adjuster for Auto Owners never spoke.

On March 25, 1998, almost three months after the McFerrans' letter notifying B & L and Kem Mart of their intention to proceed with the lawsuit, the McFerrans filed a motion for default judgment against B & L. The court granted that motion on March 26, 1998, setting a hearing for damages.

On March 27, 1998, counsel for B & L entered an appearance; an answer to the complaint was filed on March 30, 1998. B & L filed a "Trial Rule 60(B)(1)[,](3) and (8) Motion for Relief from Judgment" on April 8, 1998. *Id.* at 46–50. The trial court denied B & L's motion on April 21, 1998. B & L then filed a "Motion to Enforce Plaintiffs' Agreement Not to Seek Default and for the Court to Reconsider Order Denying Defendant, B & L's Motion for Relief from Judgment," *id.* at 65–66, which the trial court denied on the same day it was filed. We affirmed the trial court's denial of B & L's motion.

### DISCUSSION AND DECISION

1. *Agreement Between Parties*

B & L adamantly contends that the facts of record show that the McFerrans promised they would not seek a default of B & L and that we ignored that promise in reaching our previous decision. B & L argues as follows:

Contrary to the Court's finding, *the promise not to seek a default was not conditional.* On December 12, 1997, after suit was filed, counsel for the McFerrans sent to Bruce Kotek[1] a confirming letter which state [sic] in part: ... **"My clients have authorized me to instruct each of the carriers that we will not attempt to obtain a default judgment against your insurers [sic] ..."**

Contrary to the Court's determination set forth on page 6 of its opinion, the McFerrans did not promise to seek a default judgment without first giving the Defendants 30 days to appear. The December 12, 1997, letter and affidavit of Bruce Kotek, clearly revealed the McFerrans promised never to seek a default judgment. The promise, not to seek a default judgment, did not go away once the Defendants were given 30 days to file an Answer. The McFerrans did advise they would give the Defendants 30 days to file an answer, but there was never any statement the promise not to seek a default judgment was withdrawn or went away.

Appellant's Petition for Rehearing at 1–2 (footnote added) (emphasis in original).

■ B & L seems to argue that the McFerrans' December 12, 1997 letter amounted to an unconditional promise by the McFerrans never to seek a default judgment against B & L. We disagree. Under B & L's interpretation of the letter, the McFerrans would surrender all control over their lawsuit to B & L, but would receive no benefit in return. If B & L simply decided never to make an acceptable settlement offer, the McFerrans would have no recourse and could not proceed in any manner with their claim against B & L. We decline to adopt B & L's illogical interpretation of the effect of the correspondence.

■ B & L further claims that the McFerrans misrepresented their intent to seek a default of B & L, and that *Gallant Ins. Co. v. Toliver,* 695 N.E.2d 592 (Ind.Ct.App.1998) controls. In *Gallant,* an insurance carrier relied on plaintiff's counsel's representations that he would contact the carrier after taking the defendant's deposition, and so did not file an appearance in the case. This court set

aside a default judgment entered against the insurer, stating that:

> Although Ludlow [plaintiff's counsel] generally would not be obligated to keep Gallant informed of the progress in the case, his representation to Gallant that he intended to depose Rickelman and that he would inform Gallant of Rickelman's insurance status created a duty to keep Gallant apprised of any change in his intentions with respect to proceeding with the case. Gallant need not establish that Ludlow intentionally mislead [sic] it, only that it was justified in assuming nothing was going to happen in the case until further notice by Ludlow. Therefore, we conclude that Gallant reasonably relied on Ludlow's representation and, therefore, satisfied the requirements of T.R. 60(B)(1) in showing excusable neglect.

*Id.* at 595.

*Gallant* is distinguishable from the present case, as the McFerrans' counsel notified the defendants that the McFerrans intended to proceed with the lawsuit. The December 29, 1997 letter from the McFerrans' counsel made it quite clear that the McFerrans expected B & L to file an answer to their complaint within thirty days absent a serious settlement offer. We observe that B & L's co-defendant, Kem Mart, had no difficulty understanding the clear meaning of that language, and hired counsel to appear and answer on its behalf.

B & L argued on appeal that, because the December 29, 1997 letter indicated that the possibility of settlement still existed, the adjuster "was justified in assuming nothing was going to happen until further notice." Brief of Appellant at 15. We do not agree. The letter states, in part, that "[i]f no serious offers are going to be made...." R. at 34. Auto Owners made only one offer, which was rejected in the December 29, 1997 letter. Had Auto Owners actually made another offer to the McFerrans, then B & L might have grounds to complain that "counsel deceived an insurance representative as to the purpose of the lawsuit." Brief of Appellant at 15. Since there was no further offer,

---

1. Bruce Kotek was the insurance adjuster for B & L's insurance carrier.

however, B & L could not have been deceived.

The McFerrans did not extend to B & L a promise never to seek a default judgment under any circumstances. They did extend a promise not to seek a default judgment without first giving the defendants thirty days to appear. That promise was fulfilled in the McFerrans' December 29, 1997 letter. Unlike its co-defendant, B & L simply did not respond to the letter. As a result, B & L is not entitled to relief under Trial Rule 60(B)(1), (3), or (8). The trial court did not abuse its discretion in failing to set aside the default judgment.

### 2. B & L's Attack on the Integrity of this Court

We quote verbatim B & L's third argument in support of its petition for rehearing:

III. SADLY, THE RAMIFICATIONS OF THE COURT'S DECISION READS [sic] LIKE A BAD LAWYER JOKE ... "WHEN IS IT OKAY FOR A LAWYER TO LIE? WHEN HIS LIPS ARE MOVING TO AN INSURANCE ADJUSTER."

This Court's opinion *continues* the perception that was discussed extensively in the Indiana Lawyer, March 3–16, 1999, where the legal profession is attempting a public relations campaign concerning the public's perception of lawyers. The Indiana Lawyer discussed the American Bar Association's study that said the public's perception is lawyers are more concerned with their own interests than the public's or their client's and expressed a concern to stop the cocktail party jokes or mute the motion picture stereotypes that paint the legal profession as greedy and ruthless.

The Court's opinion does nothing more than fuel these perceptions. It is a widely held belief by the general public that lawyers lie and the Court's [sic] protect them. This Court cannot ignore McFerrans' lawyer lied to Bruce Kotek, when he promised not to seek a default, communicated both orally and in writing, and then later filed a default. The breaking of a promise is a lie and the essence of the Court's holding is that it is acceptable for a lawyer to lie to an insurance adjuster.

The Trial Court abused its' [sic] discretion in not enforcing McFerrans' promise not to seek a default. This Court **could have advanced lawyer accountability** in communications by finding the Trial Court abused its' [sic] discretion in not enforcing McFerrans' lawyer's promise and further, by stating the failure to enforce a lawyer's promise not to seek a default constitutes an abuse of discretion and holding that attorney misrepresentations or lying would not be tolerated.

Appellant's Petition for Rehearing at 4 (emphasis in original).

We take strong exception to B & L's characterization of this court's ruling as a bad lawyer joke. B & L's assertions are no laughing matter.[2]

■ The very nature of a petition for rehearing generally presupposes that the counsel who files such a petition disagrees with the court's earlier holding. This court is certainly willing to reconsider its decisions when appropriate and encourages counsel to pursue rehearing or our reconsideration when warranted to zealously represent the interests of clients. However, in framing arguments in support of rehearing or reconsideration, counsel are obliged to maintain a respectful bearing towards this court. *See Redman v. State*, 28 Ind. 205, 212 (1867).

■ We remind B & L's counsel that members of the bar are officers of the court. They are its assistants in the administration of justice, and so intimately related to our judiciary system, and so much a part of it, that thoughtful and self-respecting attorneys seldom allow themselves, however much they may feel aggrieved, to make public expression, in argument or otherwise, derogatory to the rectitude or good intentions of the bench. *See Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Trac-*

---

**2.** In *Bloomington Hosp'l v. Stofko,* 709 N.E.2d 1078, 1079 n. 1 (Ind.Ct.App.1999), we cautioned counsel that "referring to an opinion as 'incomprehensible' when seeking reconsideration from the very judges who issued the opinion is unpersuasive and ill-advised." The same consideration holds when referring to one of our opinions as a bad lawyer joke.

*tion Co.,* 166 Ind. 466, 466, 77 N.E. 941, 941 (1906).

We direct counsel for B & L to the advice this court rendered in *WorldCom Network Servs., Inc. v. Thompson:*

> [O]verheated rhetoric is unpersuasive and ill-advised. Righteous indignation is no substitute for a well-reasoned argument. We remind counsel that an advocate can present his cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.

698 N.E.2d 1233, 1236–37 (Ind.Ct.App.1998).

As our supreme court noted in *Portland Traction:*

> Counsel has need of learning the ethics of his profession anew, if he believes that vituperation and scurrilous insinuation are useful to him or his client in presenting his case. The mind, conscious of its own integrity, does not respond readily to the goad of insolent, offensive, and impertinent language. It must be made plain that the purpose of a brief is to present to the court in concise form the points and questions in controversy, and by fair argument on the facts and law of the case to assist the court in arriving at a just and proper conclusion. A brief in no case can be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect, or professional discourtesy of any nature for the court of review, trial judge, or opposing counsel. Invectives are not argument, and have no place in legal discussion, but tend only to produce prejudice and discord.

166 Ind. at 466, 77 N.E. at 941–42.

■ This court has previously acknowledged its plenary power to order a brief stricken for "the use of impertinent, intemperate, scandalous, or vituperative language in briefs on appeal impugning or disparaging this court, the trial court, or opposing counsel...." *Clark v. Clark,* 578 N.E.2d 747, 748 (Ind.Ct.App.1991). Striking scandalous or impertinent material has been a part of Indiana practice since long before adoption of our present trial rules. *See WorldCom,* 698 N.E.2d at 1237; *State v. Hoovler,* 673 N.E.2d 767, 768 (Ind.1997).

We thus strike the entire third section of B & L's Petition for Rehearing. Counsel is admonished that such impertinent argument is both a disservice to his client and demeaning to the judiciary and the legal profession.

The petition for rehearing is granted. This opinion on rehearing shall modify and supersede our memorandum decision.

FRIEDLANDER, J., and KIRSCH, J., concur.