

IN THE

# Court of Appeals of Indiana

In the Matter of the Paternity of E.B.K.;

Genesis E. Palma,

*Appellant-Petitioner*

v.

Zachary K. Keown,

*Appellee-Respondent*



FILED
Aug 14 2024, 10:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 14, 2024

Court of Appeals Case No.
23A-JP-2316

Appeal from the Warrick Superior Court

The Honorable Benjamin R. Aylsworth, Magistrate

Trial Court Cause No.
87D02-2002-JP-20

**Opinion by Judge Tavitas**
Judge Bradford concurs.

Judge Crone dissents with separate opinion.

**Tavitas, Judge.**

## Case Summary

[1] Genesis Palma ("Mother") appeals the trial court's grant of a modification of custody regarding E.K. ("Child"), which was filed by Zachary Keown ("Father"). The parties initially agreed to joint legal and physical custody; however, the trial court later granted Father's petition for emergency temporary change of custody and ordered that Mother have supervised parenting time with the Child. Thirty-two months later, the trial court began final hearings regarding the Child's custody. The trial court granted Father's petition for change of custody and granted Mother unsupervised parenting time.

[2] Mother argues that her due process rights were violated during these proceedings due to procedures used to grant the temporary change of custody, delays in conducting the final hearings, and the denial of guardian ad litem ("GAL") discovery. Mother also argues that the trial court erred by granting Father's petition to modify custody. As for the due process argument, we conclude that Mother has failed to demonstrate a due process violation regarding the emergency temporary change of custody. We, however, conclude that Mother's due process rights were violated by the extraordinary delays in conducting the final custody hearings and by the trial court's denial of Mother's discovery requests to the GAL. Moreover, regarding the petition to modify

custody, Mother has demonstrated that the trial court failed to find a proper substantial change in circumstances and erred by granting the petition. Accordingly, we reverse and remand.

## Issues

[3] Mother raises several issues, which we restate as:

> I. Whether Mother's due process rights were violated by the procedures used by the trial court to grant the temporary change of custody.

> II. Whether Mother's due process rights were violated by the delays in proceeding to the final custody hearing.

> III. Whether Mother's due process rights were violated by the trial court's denial of Mother's discovery requests to the GAL.

> IV. Whether the trial court erred by granting Father's petition to modify custody.

## Facts

[4] The Child was born in June 2018 to Mother and Father. Mother has an older child, E.P., and Mother has sole legal and physical custody of E.P. David Heal was appointed as the GAL during the paternity proceedings for the Child. Due to concerns regarding Mother's mental health, substance abuse by Mother, and an open Department of Child Services ("DCS") investigation, the GAL recommended joint physical custody as long as Mother lived with her parents

and supervised visits for Mother if she moved to another residence. In February 2019, Mother and Father reached an agreement regarding custody, parenting time, and child support. The parties agreed to joint legal and physical custody. The agreement required ninety days written notice if either Mother or Father intended to change their residence.

[5] In January 2020, Mother married Clayton Alexander after dating him for approximately seven months, and she and the children moved out of her parents' residence. On February 5, 2020, Father filed an emergency petition to modify custody. Father alleged that: Mother had a history of mental illness and substance abuse; the Child has had unexplained bruising; Mother no longer resided at her parents' residence; Mother indicated a desire to move to Chicago; and Mother recently eloped and refused to provide any information about her new husband.

[6] The trial court held a hearing on the emergency petition on February 18, 2020. During Father's testimony, Mother, who was pro se, requested a continuance to hire an attorney. The trial court denied Mother's motion. Father testified that he often has the Child during Mother's parenting time; the Child had unusual bruising during the past two months; Mother moved without any prior notice to Father; Mother made concerning statements to Father regarding her relationships with drug dealers and murderers, who according to Mother were following Father and his fiancée; and Mother threatened to relocate to Illinois. Father was concerned regarding Mother's mental health, drug abuse, unstable living situation, and lack of stable employment.

[7] Father called Heal, the GAL in the 2018 paternity action, to testify. The GAL testified that, during his 2018 investigation, Mother failed to inform the GAL about an open DCS investigation, which had been substantiated. At the time, Mother was cutting herself and left a mental health facility without obtaining treatment. On one occasion, Mother had cocaine in her system when she went to the hospital. According to the GAL, Father also claimed that Mother battered him.[1]

[8] Mother testified that: (1) she had been receiving counseling; (2) she was no longer cutting herself; and (3) she recently married. The trial court declined to grant the emergency custody change at that time, reappointed Heal as GAL, and set a progress hearing for April 7, 2020.

[9] On March 4, 2020, Father filed his second emergency petition to modify custody, in which he alleged that: (1) on February 13, 2020, officers responded to Mother' residence due to a report of domestic violence and, the officers transported Mother to the hospital against her will because she was demonstrating signs of mental illness and was a danger to others; (2) on February 28, 2020, officers again responded to Mother's residence due to a report of domestic violence in the presence of the Child; and (3) Mother

---

[1] There was no objection made pursuant to Indiana Code Section 31-17-2-21(c), which provides: "The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child . . . ."

cancelled her appointment with the GAL on the same day as one of the domestic violence incidents.

[10] On March 4, 2020, the GAL filed a written report with the trial court. The GAL reported Mother's missed appointment with the GAL on February 28, 2020. Mother claimed she cancelled the appointment because the Child was ill. Additionally, the police department contacted the GAL to inform him of domestic violence between Mother and her husband, Alexander, on February 28, 2020. Officers reported to the GAL that the domestic violence occurred in front of Mother's children; Mother had alcohol on her breath; Mother allegedly threatened people with a hammer and scissors; Mother had bruises on her arms; and Mother's husband, Alexander, also had bruises. The officers reported the matter to DCS. The GAL made the following recommendation to the trial court:

> The Guardian ad Litem shares the exact same concerns as two years ago. Mother should not have custody of these children without supervision. The Guardian ad Litem awaits to hear from the Department of Child Services. The Guardian ad Litem believes mother should have a mental evaluation done. (Not by Brentwood Springs).

*Id.* at 61.

[11] On March 11, 2020, the trial court held a hearing on Father's emergency motion. Father's counsel requested that the hearing be conducted in summary fashion, and Mother's counsel agreed "to submit to the summary hearing . . . ." Tr. Vol. II p. 37. Mother's counsel also orally requested findings of fact and

conclusions thereon, which the trial court denied because the trial court did not "have time in [its] calendar to do that." *Id.* at 38. The GAL testified that he had concerns regarding Mother's mental health and concerns that she was abusing substances. The GAL recommended that Mother have a psychological evaluation other than at Brentwood Springs because Mother had previously been evaluated by Brentwood Springs, and the evaluation was not comprehensive in the GAL's opinion. The GAL also recommended that Father have custody of the Child and that Mother have supervised parenting time. Mother argued that Father failed to prove that Mother's parenting time would endanger or impair the Child's physical or mental health.

[12] On March 20, 2020, the trial court issued a written order granting Father's petition for emergency modification of custody. The trial court found that a "bona fide emergency regarding the custody of [the Child] exists," that the previous joint physical and legal custody arrangement was "temporarily suspended," and that Father was granted legal and physical custody of the Child until further notice of the court. Appellant's App. Vol. II pp. 64-65. The trial court granted Mother supervised parenting time of eight hours a week, ordered Mother to submit to a hair follicle analysis and a urinalysis, and ordered Mother to submit to a "psychological evaluation." *Id.* at 66. If Mother submitted the required drug testing and "psychological evaluation," the trial court indicated that it would consider allowing maternal grandmother to supervise Mother's parenting time with the Child. *Id.*

[13]  Mother immediately submitted to the drug testing and tested negative for unprescribed or illicit substances. Mother's marriage to Alexander was annulled, and Mother obtained a protection order against him in March 2020. Mother entered into an Informal Adjustment with DCS regarding E.P.; Mother completed services, including a mental health evaluation and group therapy; and the Informal Adjustment was closed in March 2021. E.P. was never removed from Mother's care by DCS.

[14]  The Covid-19 pandemic interfered with Mother's ability to engage in supervised parenting time with the Child. By May 21, 2020, Mother had not seen the Child in ten weeks except for limited FaceTime calls. Mother informed the trial court that Father was refusing to allow Mother to attend the Child's doctor appointments; he limited and recorded FaceTime calls; and he alienated the Child from Mother. Mother was eventually able to participate in supervised parenting time at a parenting time center, and at some point during the proceedings, Mother's parents were allowed to supervise some of Mother's weekly parenting time with the Child. Over the next several months, the parties engaged in repeated contentious disputes over: (1) Mother's supervised parenting time; (2) the trial court's requirement that Mother participate in a psychological evaluation, and (3) discovery. *Id.* The discovery disputes and other scheduling delays resulted in repeated continuances of the final hearing dates.

[15]  Of relevance to this appeal, in April 2020, Mother issued a subpoena duces tecum to the GAL and requested the following documents:

1. Copies of any and all records obtained by you or provided to you in the matter;

2. Copies of any and all records requests that you have made since January 1, 2020 in this matter;

3. Copies of all reports that you have filed with the Court in this matter;

4. Any and all copies of correspondence, including, but not limited to, emails, text messages, voice recordings, and telephone calls between you and the following parties:

   a. David W. Heal and [Mother];

   b. David W. Heal and [Father];

   c. David W. Heal and Clayton Alexander;

   d. David W. Heal and [ ] Lisa B. Harris [Father's counsel]; and

   e. David W. Heal and any other party that was communicated with regarding this matter.

Appellant's App. Vol. II p. 72. The GAL filed a response and claimed that his personal notes, emails, and deliberative materials were excluded from

disclosure pursuant to Indiana Administrative Rule 9(G)(2)(i).[2] The GAL also claimed that it was "totally unethical" to request documentation on conversations, emails, and text messages between the GAL and opposing counsel. *Id.* at 75. Father also submitted a response in support of the GAL. The trial court appointed an attorney to represent the GAL, and a hearing was held on the matter in June 2020.[3] The trial court denied Mother's request for production of records from the GAL and denied Mother's request to depose the GAL.[4]

[16] In April 2021, Mother filed a motion for change of judge, which the trial court denied. In April 2021, Mother also filed a petition to modify custody. Mother alleged that: (1) the DCS cases had been dismissed; (2) Mother completed counseling and services through DCS; (3) Mother had not been allowed significant contact with the Child for more than one year; and (4) Father had requested continuances of evidentiary hearings for the purpose of conducting discovery, but he had failed to conduct additional discovery. Mother requested that she be relieved of supervised parenting time requirements.

[17] Although the trial court had earlier denied the motion for change of judge, in May 2021, the trial court recused, and Judge Benjamin Aylsworth was selected

---

[2] This provision of Administrative Rule 9 was repealed and replaced by Access to Court Records Rule 5, effective January 1, 2020.

[3] The record does not indicate whether the GAL was an attorney; the record merely indicates that the GAL has a degree in business.

[4] We have not been provided with a transcript of this hearing.

as the special judge. Mother then repeatedly requested that a final hearing be scheduled. The Chronological Case Summary, however, reflects little progress in moving the case forward until September 2022, when a scheduling conference was held, and final hearing dates were set in November and December of 2022. By the parties' agreement, the trial court vacated the November 2022 hearing date to "allow the parties to continu[e] working toward a resolution." *Id.* at 22. Ultimately, the trial court conducted the final hearing over five days in December of 2022 and January and February of 2023.

[18] Shortly before the hearings, Mother filed a motion to quash the GAL's testimony because she was denied "the opportunity to conduct appropriate discovery . . . ." *Id.* at 101. Mother argued that she was entitled to depose the GAL; review the GAL's "investigation and file"; and obtain any and all documents considered by, obtained by, or provided to the GAL. *Id.* at 116. The trial court declined to reconsider the initial trial court's June 2020 order and denied Mother's motion.

[19] During the December hearing, the GAL testified that he closed the case in May 2022 because Mother stopped communicating with him. He still recommended that Mother submit to a psychological evaluation and have supervised visits. The GAL testified that he destroyed his physical file on the matter after he closed the case. During his testimony, the GAL had a printout of his personal notes from a computer file. Mother objected to the GAL using the notes to refresh his recollection because her attorney had not seen these notes. The trial court then let the GAL decide if: (1) he was going to use the notes and provide

a copy to the attorneys; or (2) testify without his notes. In response, the GAL ripped up his notes on the stand and testified without the notes.

[20] Mother testified that she submitted to a mental health assessment through her DCS Informal Adjustment and participated in group therapy.[5] Mother obtained her own apartment and her own cleaning business; she cares for her older child, who has never been removed from her care; she sees a psychiatrist and is in therapy; she goes to church; and she has been sober from alcohol and illicit substances for three years. Mother testified that she is prescribed Adderall for ADHD and takes various vitamins. In the past three years, Father has not consulted with Mother regarding the Child's daycare or health care. Mother requested sole physical custody of the Child.

[21] Father testified that the Child is now four years old. Father testified regarding the continued hostility between Mother and Father and Father's family. Father expressed continued concern regarding Mother's mental health, the possibility of physical abuse of the Child, Mother's driving abilities, and Mother's history of substance abuse. Father requested that Mother's parenting time with the Child remain supervised.

---

[5] The medical records admitted at the hearing indicate that Mother has been diagnosed with an unspecified personality disorder. The medical records also indicate that Mother states she was diagnosed with a bipolar disorder. Mother's formal mental health diagnosis, however, is unclear from the records.

[22] Following the evidentiary hearing, the trial court entered findings of fact and conclusions thereon modifying custody of the Child on May 4, 2023, as follows:

> 25. During the time Mother was married to Clayton Alexander, the GAL provided reports expressing concern over domestic violence occurring in Mother's home.
>
> 26. On March 11, 2020, the GAL testified and made recommendations and the Court ultimately ordered Mother "shall enroll in treatment and provide proof of the same." Also, "Court further orders Mother's assessment shall not be in Brentwood." The Court's Order failed to provide any written findings or further reasoning or explanation at that time what specific "treatment" Mother was to "enroll and complete" and why any required assessment could not occur at Brentwood, a facility regularly used in Warrick County by the Courts.
>
> 27. Since the birth of the child Mother has obtained mental health treatment from the following providers: Evansville Psychiatric Associates; Christian Counseling; Southwestern Behavioral Healthcare; and Brentwood.
>
> 28. The GAL testified during the later contested hearing dates that he withdrew from the cause since the child was safe in Father's care, it was in the child's best interests to remain in Father's care and since Mother had failed to contact him for an extended period of time.
>
> 29. Father has failed to inform Mother of the minor child's speech therapy appointments, dentist appointments, preschool enrollment and counseling sessions despite the parties continuing to share joint legal custody at all times.

30. Father testified he has never intentionally taken actions to alienate Mother from the minor child.

31. Father could not cite any reason during testimony as to what a full psychological evaluation completed by Mother would uncover or why that would help him feel more comfortable with Mother's return to having unsupervised parenting time.

32. Father testified that Mother has never actually harmed the child.

33. Father's wife--the child's stepmother, and both the Paternal and Maternal Grandmother of the child likewise testified that Mother has never harmed the child.

34. No witness ever testified that Mother has ever actually harmed the child.

35. The testimony and GAL reports indicate Father has made numerous allegations against Mother and concerns for her behavior which were not proven credible after GAL investigation or later during contested hearing.

36. The GAL testified that Mother never harmed or presented a danger to the child during his entire involvement in the matter since his first appointment in 2018.

37. The GAL retired prior to the final three (3) days of contested trial.

38. Mother has never tested positive for any unprescribed or illegal substances throughout the duration of this matter.

Appellant's App. Vol. II pp. 41-42.

[23]     The trial court then concluded:

> 47.  After full review of the evidence and testimony and considering the required factors as listed above, the Court does FIND a substantial and continuing change in circumstances has occurred and that it is in the best interests of the minor child at this time to modify the prior 50/50 custody and parenting time order dated February 4, 2019.
>
> 48.  Specifically, the Court FINDS that factor (5)--the child's adjustment to home, school and community is a substantial and continuing change in circumstances as the minor child has resided solely with Father since March of 2020 with Mother only having minimal parenting time.  This substantial and continuing change in circumstances was directly caused by another substantial change listed under factor (7) that occurred around March 2020, when Mother was in a domestic violence relationship with her prior husband for years--an extended period of time.  This has caused a substantial and continuing detrimental effect as well on factor (6)--Mother's mental health, which ultimately affected her ability to safely and properly parent and be a full 50/50 joint custodian at that time. The substantial changes in Mother's mental health due to the pattern of domestic violence were continuing as well until she eventually ended the relationship with her prior husband after over three (3) years.
>
> 49.  As a result of the Court finding a substantial and continuing change in circumstances in one of the factors requiring modification of the prior order and finding the modification [is] in the best interests of the minor child at this time . . . .

*Id.* at 45-46.

[24] The trial court granted the parties "joint legal custody" of the Child with Father having "final decision-making authority" in the event of a dispute between Father and Mother regarding the Child's "health, education, religion and/or any other future matter related to the child's best interests."[6] *Id.* at 47. The trial court granted Father primary physical custody and Mother unsupervised parenting time. The trial court also concluded:

> The Court ultimately FINDS that the long amount of time (in excess of 3 years) that has passed since the prior Judicial Officer's Order for Mother's "treatment" to be conducted by a provider other than Brentwood without explanation is hereby abated and deemed moot by this Court at this time. This Court determines that requirement to be overly broad and not supported by written findings or present evidence under the immediate facts and circumstances. The Court also cannot ignore the fact that Mother has had continuous, sole and unsupervised custody of her other child throughout the entire duration of this matter which further signifies her present ability as a proper parent.

*Id.* Mother now appeals the custody order.

## Discussion and Decision

[25] Mother challenges the trial court's modification of custody. "'Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.'" *Hahn-Weisz v.*

---

[6] This is not joint legal custody, but the issue is not argued on appeal.

*Johnson*, 189 N.E.3d 1136, 1141 (Ind. Ct. App. 2022) (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)). "'Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.'" *Id*. (quoting *Best*, 941 N.E.2d at 502).

> Additionally, there is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters. Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.

*Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (citations and internal quotations omitted).

## I. Mother's Due Process Rights

[26] Mother first argues that her due process rights were violated by alleged irregularities in the custody proceedings. The Fourteenth Amendment of the United States Constitution prohibits any state from depriving any person of "life, liberty, or property, without due process of the law." U.S. Const. amend. XIV, § 1. Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property,

or reputation, shall have remedy by due course of law." The "identification of the specific dictates of due process generally requires consideration of three distinct factors": (1) the private interest that will be affected by the official action; (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the State's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903 (1976). We must also keep in mind "the general proposition that if the State imparts a due process right, then it must give that right." *A.P. v. Porter Cnty. Off. of Fam. & Child.*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied*.

[27] "[T]he interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized" by the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). "Child custody proceedings implicate the fundamental relationship between parent and child, so procedural due process must be provided to protect the substantive rights of the parties." *Bixler v. Delano*, 185 N.E.3d 875, 878 (Ind. Ct. App. 2022). In the context of a termination of parental rights, we have recognized there is "an inherent increased risk of error" where the record "is replete with procedural irregularities." *A.P.*, 734 N.E.2d at 1118. Thus, while one irregularity "by itself" may not rise to the level of a due process violation, we may find a due process violation where there are "plain,

numerous, and substantial" irregularities. *Id.* Whether a party is denied due process is "a question of law," which "we review de novo." *McClendon v. Triplett*, 184 N.E.3d 1202, 1210 (Ind. Ct. App. 2022), *trans. denied*.

### A. March 2020 Emergency, Temporary Custody Modification

[28] Mother first argues that her due process rights were violated because the trial court restricted her custody and parenting time without an evidentiary hearing and without written findings in the emergency custody modification order. According to Mother, the trial court's March 2020 order was based upon a "short, summary hearing wherein no evidence was taken except for a brief questioning from the GAL." Appellant's Br. p. 24. Mother also contends that the trial court failed to make a written determination that Mother's custody would endanger the Child's physical health and well-being or significantly impair the Child's emotional development.

[29] First, to the extent Mother is attacking the validity of the trial court's temporary custody order, we note that Mother did not seek interlocutory appeal and that the trial court has now made a final custody determination in this case. We are "unable to render her any effective relief," and we find that the issue is moot. *McDaniel v. McDaniel*, 150 N.E.3d 282, 292 (Ind. Ct. App. 2020), *trans. denied*. Moreover, Mother agreed to a summary presentation of evidence at the emergency hearing and, thus, has waived this issue. *See D.G. v. S.G.*, 82 N.E.3d 342, 347 (Ind. Ct. App. 2017) (rejecting a due process violation argument where the mother invited the error and, "[u]nder the invited error doctrine, a party

may not take advantage of an error that she commits, invites, or which is the natural consequence of his own neglect or misconduct"), *trans. denied*.

## B. Delay of Final Custody Determination

[30]     Next, Mother argues that the thirty-two month delay between the emergency custody modification in March 2020 and the start of final custody hearings in December 2022 violated her due process rights. Final hearings on Father's petition for modification of custody were held over five days in December 2022, January 2023, and February 2023; thirty-two months elapsed between the March 2020 order and the start of those final hearings. The trial court's order was then issued in May 2023; thus, Mother was required to have supervised parenting time from March 2020 to May 2023—more than thirty-seven months.

[31]     Indiana Code Section 31-17-2-6 provides that "[c]ustody proceedings must receive priority in being set for hearing." Thus, the trial court had a duty and responsibility to timely set custody matters for hearing. This is especially true where, as here, the trial court granted an emergency, temporary change of custody.

[32]     We addressed a similar issue in *Wilcox v. Wilcox*, 635 N.E.2d 1131 (Ind. Ct. App. 1994). There, the noncustodial father obtained an *ex parte* temporary change of custody, and a hearing was eventually held more than fifteen months after the temporary custody change. The trial court then granted custody to the father. On appeal, the mother argued that the trial court committed reversible error by failing to give the hearing on permanent custody a priority setting.

[33] We noted the adage that "justice delayed is justice denied" and emphasized that "[a] prompt hearing is especially essential in a custody case where the parties are dueling for a child's affections and the longer a delay, the more chance one party has to influence the child." *Wilcox*, 635 N.E.2d at 1136 (quoting *Brown v. Brown*, 463 N.E.2d 310, 313 (Ind. Ct. App. 1984)). "[A] delay in [a] custody hearing may increase the chances of a custodial parent eventually being deprived of custody. . . ." *Id.* (quoting *Brown*, 463 N.E.2d at 313). We discussed our concerns about the delayed permanent custody hearing as follows:

> By the time the hearing was conducted, the children had lived with Father for almost two years—a considerable amount of time in the lives of these young children. They became firmly entrenched in Father's life. Mother, on the other hand, was permitted only limited supervised visitation with her children. She was effectively removed from the children's lives for almost two years before having an opportunity to be heard. Thus, Father had ample opportunity to influence the children while Mother was out of the picture.

*Id.* at 1136-37. We concluded that "the delay of fifteen months severely prejudiced Mother's right to a hearing on continued custody so as to deny her procedural due process." *Id.* at 1137. We reversed the trial court's order granting the father permanent custody and ordered that custody of the children be returned to the mother pending further proceedings. *Id.*

[34] Father argues that *Wilcox* is distinguishable because the temporary change in *Wilcox* occurred after an *ex parte* order while, here, Mother was granted two

hearings and a GAL investigation before the temporary custody modification. Mother was also given the opportunity to present evidence and cross-examine the GAL before the restriction of her parenting time was implemented. We, however, have significant concerns over the thirty-seven-month time period between the temporary custody order and the permanent custody order here. The extreme number of delays and limited, supervised contact between Mother and the Child allowed the Child to become firmly entrenched in Father's care, which is evidenced by the trial court's final custody order. The delay here clearly prejudiced Mother.

[35]     Although both parties' behaviors contributed to the delays, the trial court was under a statutory duty to expedite the matter.[7] Even when Mother filed motions to set a final hearing date, the trial court denied those motions, and the case became stale. The trial court then left it to the parties to move the case forward, but the parties are not under the same statutory duty as the trial court. Under these circumstances, we conclude that the extraordinary delay here prejudiced Mother and violated her due process rights.

---

[7] We must also acknowledge, however, that the delays were caused by the parties' contentious behavior. Extensive disputes regarding discovery, the GAL's obligations, details of Mother's supervised parenting time, and the meaning of the initial trial court's requirement that Mother obtain a psychological evaluation permeated this litigation. Further delays occurred when Mother requested a change of judge. The initial trial court judge eventually recused, and a special judge was appointed. Mother repeatedly requested a final hearing date, which the special judge denied, but then months passed without either party requesting a hearing on the matter or filing any pleadings.

## C. GAL's Testimony

[36]     Finally, Mother argues that the trial court violated her due process rights by: (1) denying Mother's request for production of documents of the GAL and request to depose the GAL; (2) denying Mother's request to quash the GAL's testimony; and (3) relying on the GAL's testimony.[8]

## 1. Mother Was Entitled to GAL Discovery.

[37]     We look to statutory authority and the rules of trial procedure to determine if the trial court erred. First, in general, a guardian ad litem is statutorily defined as:

> an attorney, a volunteer, or an employee of a county program designated under IC 33-24-6-4 who is appointed by a court to:
>
> (1) represent and protect the best interests of a child; and
>
> (2) provide the child with services requested by the court, including:
>
>     (A) researching;

---

[8] Mother also argues that allowing the GAL to testify after the destruction of his investigation file and notes was a due process violation. Indiana Evidence Rule 612(a)(1) provides: "If, while testifying, a witness uses a writing or object to refresh the witness's memory, an adverse party is entitled to have the writing or object produced at the trial, hearing, or deposition in which the witness is testifying." The trial court gave the GAL the option of producing his notes and using them to refresh his memory or testifying without his notes. The GAL chose to testify without his notes. The trial court's ruling complies with Rule 612(a)(1), and we find no due process violation.

(B) examining;

(C) advocating;

(D) facilitating; and

(E) monitoring;

the child's situation.

Ind. Code § 31-9-2-50.  "A guardian ad litem or court appointed special advocate shall represent and protect the best interests of the child."  Ind. Code § 31-17-6-3.  The guardian ad litem is considered an "officer[ ] of the court for the purpose of representing the child's interests."  I.C. § 31-17-6-4.

[38]     Indiana Code Section 31-17-2-12 allows the trial court to order an investigation and report in custody proceedings, and the investigation may be performed by a guardian ad litem.[9]  Indiana Code Section 31-17-2-12 further provides:

---

[9] Indiana Code Section 31-17-2-12(a) provides that the trial court may appoint a GAL, among others, to perform an investigation, "[i]n custody proceedings **after evidence is submitted upon the petition**, if a parent or the child's custodian so requests . . . ."  (emphasis added).  There seems to be an inconsistency with the statute, as the GAL is often appointed before evidence is submitted on a petition for modification of custody. The parties here do not raise the issue, and we do not address it further.  *See, e.g.*, *Deasy-Leas v. Leas*, 693 N.E.2d 90, 94 (Ind. Ct. App. 1998) (holding that "the record does not disclose that the threshold triggering mechanism to order an investigation and report, that is 'custody proceedings after evidence is submitted upon the petition,' has been met" and concluding that "[l]acking the triggering circumstances, the statute is inapplicable to the present circumstances"), *trans. denied*, *abrogated on other grounds by Martin v. State*, 774 N.E.2d 43 (Ind. 2002).

> (c) [T]he investigator **shall** make the following available to counsel and to any party not represented by counsel:
>
> > (1) **The investigator's file of underlying data and reports**.
> >
> > (2) Complete texts of diagnostic reports made to the investigator under subsection (b).
> >
> > (3) The names and addresses of all persons whom the investigator has consulted.
>
> (d) Any party to the proceeding may call the investigator and any person whom the investigator has consulted for cross-examination. A party to the proceeding may not waive the party's right of cross-examination before the hearing.

(emphasis added). The guardian ad litem "may subpoena witnesses and present evidence regarding: (1) the supervision of the action; or (2) any investigation and report that the court requires of the guardian ad litem . . . ." I.C. § 31-17-6-6. "If the court finds it necessary to protect the child's welfare that the record of any interview, a report, or an investigation in a custody proceeding not be a public record, the court may make an appropriate order accordingly." I.C. § 31-17-2-20. Further, proceedings under Indiana Code Chapter 31-17-2 for child custody and modification of child custody must "comply with the Indiana Rules of Civil Procedure." I.C. § 31-17-2-2.

[39]     "Indiana's discovery rules are designed to permit 'liberal discovery' in order to provide the maximum amount of information possible to both parties as they prepare their cases and reduce the possibility of surprise at trial." *Minges v.*

*State*, 192 N.E.3d 893, 897 (Ind. 2022).  The Trial Rules, however, also impose limits, and "certain material is protected from disclosure" pursuant to Trial Rule 26(C).[10]  *Id.* at 898.

[40]     We discussed these statutory provisions and related trial rules in *Deasy-Leas v. Leas*, 693 N.E.2d 90, 95 (Ind. Ct. App. 1998), *trans. denied, abrogated on other grounds by Martin v. State*, 774 N.E.2d 43 (Ind. 2002).  There, the guardian ad litem filed motions to quash discovery regarding the guardian ad litem's files

---

[10] Trial Rule 26(C) provides:

> Protective Orders.  Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is being taken, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the discovery not be had;
>
> (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;
>
> (5) that discovery be conducted with no one present except the parties and their attorneys and persons designated by the court;
>
> (6) that a deposition after being sealed be opened only by order of the court;
>
> (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
>
> (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.  If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery.  The provisions of Trial Rule 37(A)(4) apply to the award of expenses incurred in relation to the motion.
>
> (9) that a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause.  The court may specify conditions for the discovery.

and sought protective orders regarding the same. The trial court found that "no Indiana statute or trial rule . . . imposes any confidentiality or privilege upon the guardian ad litem/child relationship." *Deasy-Leas*, 693 N.E.2d at 92. The trial court denied the guardian ad litem's motions, and the guardian ad litem appealed. On appeal, we noted that "[t]he guardian is a party to the proceedings and is subject to examination and cross-examination." *Id.* at 97. Although no statute creates a guardian ad litem/child privilege, and in determining whether the guardian ad litem's file is subject to discovery, we must consider "the general statutory design and discovery rules on confidentiality." *Id.* at 95.

[41] Indiana Code Section 31-17-2-20 allows the trial court to remove certain documents from the public record, but this provision "does not specifically apply to discovery or to parties." *Id.* Instead, the discovery rules must be considered. We held that "a trial court may rely upon the protective powers of T.R. 26(C) when a guardian ad litem or any other party requests confidentiality." *Id.* at 96.

## 2. The Trial Court's Denial of Mother's Discovery Requests to the GAL Resulted in a Due Process Violation.

[42] Here, Mother requested that the GAL provide documentation of his conversations, text messages, and emails with the parties and their attorneys,

and the GAL refused to do so.[11]  The GAL also refused to provide his personal notes.  This information was discoverable pursuant to Indiana Code Section 31-17-2-12(c)(1) as the GAL's "underlying data."

[43]  The GAL, however, argued that the information was not subject to discovery due to Indiana Rule 5(D)(5) on Access to Court Records, which provides for the exclusion from public access of: "All personal notes, organizers, or calendars; e-mail; and deliberative material of judges, jurors, court staff, and judicial agencies, whether recorded electronically or on paper."[12]  Although the GAL is considered an officer of the court, the GAL is not and cannot be part of the "court staff" subject to Rule 5(D)(5).  Other than a guardian ad litem,

---

[11] Mother relies in part upon Proposed Guardian ad Litem Guidelines Rule 3.11, which provides:

> If a party so requests, the GAL must make their file available to any requesting party or their counsel as is outlined in IC 31-17-2-12.  A GAL may file a motion for a protective order under the Indiana Trial Rules.

> Commentary: Upon request, the GAL must make their GAL file available to any party or counsel for party requesting the file as outlined in Indiana law.  The GAL should produce underlying data and reports, complete texts of diagnostic reports made to and obtained by the GAL, and the names and contact information of all persons with whom the GAL consulted or interviewed.  Any party or counsel for a party may seek copies of this information and that party or counsel is responsible for any costs pertaining to making such copies.

> A GAL may seek a protective order to prevent disclosure of highly sensitive information in the GAL file.  A GAL may also seek orders from the court protecting the GAL file if the GAL reasonably believes that a party is attempting to use the GAL as a vehicle to obtain information to which the party is not entitled, or if the GAL can reasonably demonstrate that a party is making multiple file requests in an effort to hinder the GAL's investigation.

These proposed guidelines, however, have not yet been adopted and specifically provide: "These guidelines have not been approved and should not be used in any official capacity."  Accordingly, we cannot consider this proposed rule.

[12] Below, the GAL erroneously relied upon Administrative Rule 9, which was repealed and replaced by Indiana Access to Court Records Rule 5, effective January 1, 2020.  The rules, however, contain similar language.  Effective January 1, 2024, Rule 5(D)(5) was amended and now provides for the exclusion from public access of: "All personal notes, organizers, or calendars; electronic communications, including without limitation e-mail, text messages, photographs, and all related electronic data; and deliberative material of judges, jurors, court staff, and judicial agencies, whether recorded electronically or on paper."

multiple persons are considered officers of the court but clearly are not considered court staff. *See, e.g.*, *B & L Appliance & Servs., Inc. v. McFerran*, 712 N.E.2d 1033, 1037 (Ind. Ct. App. 1999) (noting that members of the bar are officers of the court); *State ex rel. Dep't of Fin. Insts. v. Kaufman*, 30 N.E.2d 978, 980 (Ind. 1941) (noting that a personal representative is regarded as an officer of the court); *Towne & Terrace Corp. v. City of Indianapolis*, 156 N.E.3d 703, 716 (Ind. Ct. App. 2020) (noting that a receiver is an officer of the court), *trans. denied*. Father cites no authority that the GAL is "court staff" merely because the GAL is an officer of the court.

[44] The information at issue here was discoverable pursuant to Indiana Code Section 31-17-2-12; further, the parties cite no relevant authority that the GAL could not be deposed. We have not been provided with the transcript of the hearing regarding the discovery dispute, and we are unable to ascertain the basis for the trial court's decision to deny Mother's discovery requests. Under these circumstances, we conclude that the trial court abused its discretion by denying Mother's request for discovery from the GAL, and Mother's due process rights were violated.

## II. Grant of Father's Petition to Modify Custody

[45] Next, Mother challenges the trial court's grant of Father's petition to modify custody. Indiana Code Section 31-14-13-6 requires the party seeking to modify an existing custody order to prove that: (1) modification is in the best interests of the Child; and (2) there has been a **substantial change** in one or more of the

factors set forth in Indiana Code Sections 31-14-13-2 or 31-14-13-2.5.[13] The

factors set forth in Indiana Code Section 31-14-13-2 ("Section 2") are:

> (1) The age and sex of the child.

> (2) The wishes of the child's parents.

> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

> (4) The interaction and interrelationship of the child with:

>> (A) the child's parents;

>> (B) the child's siblings; and

>> (C) any other person who may significantly affect the child's best interest.

> (5) The child's adjustment to home, school, and community.

> (6) The mental and physical health of all individuals involved.

> (7) Evidence of a pattern of domestic or family violence by either parent.

---

[13] Indiana Code Section 31-14-13-2.5 applies only when the trial court finds by clear and convincing evidence that the child has been cared for by a de facto custodian, which is inapplicable in this case.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

In making a child custody determination under Section 2, a trial court "shall" consider "all relevant factors," including each factor listed above. I.C. § 31-14-13-2; *see also In re of Paternity of A.R.S.*, 198 N.E.3d 423, 430-31 (Ind. Ct. App. 2022).

[46] Our Courts have long held that evidence of improvement of a child's condition during a temporary change of custody cannot be the basis of a substantial change in one of the above factors. *See Joe v. Lebow*, 670 N.E.2d 9 (Ind. Ct. App. 1996). In *Joe*, we held:

> [T]o . . . permit permanent custody to be transferred to that parent based upon evidence of "improvement" in the child's condition while in that parent's temporary care, might tend to encourage noncustodial parents to bring such petitions not on their merits, but as a conduit to obtain temporary custody of a child, then present evidence of such "improvement" as a "back-door" way of relitigating the initial custody determination. . . . Thus, we hold that the "substantial change" necessary to support a modification of custody may not be premised upon evidence of improvement in a child's condition while that child has been in the temporary custody of a noncustodial parent.

*Id.* at 22 (footnote omitted). A child's improving condition, however, may be part of a trial court's consideration of the child's best interests. *Id.* at 23.

[47] Here, the trial court found the following substantial change:

> [T]he Court FINDS that factor (5)--the child's adjustment to home, school and community is a substantial and continuing change in circumstances as the minor child has resided solely with Father since March of 2020 with Mother only having minimal parenting time. This substantial and continuing change in circumstances was directly caused by another substantial change listed under factor (7) that occurred around March 2020, when Mother was in a domestic violence relationship with her prior husband for years--an extended period of time. This has caused a substantial and continuing detrimental effect as well on factor (6)--Mother's mental health, which ultimately affected her ability to safely and properly parent and be a full 50/50 joint custodian at that time. The substantial changes in Mother's mental health due to the pattern of domestic violence were continuing as well until she eventually ended the relationship with her prior husband after over three (3) years.

Appellant's App. Vol. II p. 46.

[48] First, as in *Joe*, the trial court erred by using the fact that the Child resided with Father since March 2020 pursuant to Father's emergency petition as a substantial change in one of the Section 2 factors. The extraordinary delays here allowed the Child to become "firmly entrenched" in Father's life. *Wilcox*, 635 N.E.2d at 1136. The trial court, thus, abused its discretion by using the Child's adjustment to Father's home as a substantial change to warrant a modification of custody.

[49] Accordingly, we examine the rest of the trial court's finding to determine if the trial court identified any other substantial change. The domestic violence referred to in the finding began shortly after Mother's January 2020 wedding and ended in March 2020, when Mother and Alexander separated, and the trial

court's custody order was entered in May 2023. The domestic violence was no longer an issue and had not been an issue for three years.

[50] We note that the trial court's finding is clearly erroneous regarding the length of Mother's relationship with Alexander, her former husband. The evidence showed that Mother began relationship with Alexander in 2019; they married in January 2020; the abuse began shortly after the marriage; the marriage was annulled in 2020; and Mother obtained a protection order against Alexander in March 2020. Mother was not "in a domestic violence relationship with her prior husband for years," and this finding is clearly erroneous. Appellant's App. Vol. II p. 46. Likewise, the finding that Mother "eventually ended the relationship with her prior husband after over three (3) years," is clearly erroneous. *Id.* Father concedes that this portion of the finding is clearly erroneous.[14] *See* Appellee's Br. p. 38.

[51] Likewise, the trial court mentioned that Mother's mental health suffered as a result of the domestic violence. Earlier in its order, the trial court found that "Mother has had prior issues with mental health, specifically concerning the relationship with her prior husband and has received treatment from multiple mental health treatment providers to improve her stability." Appellant's App. Vol. II p. 45. No evidence, however, was presented of ongoing severe mental

---

[14] Mother's swift and successful resolution of the domestic violence is commendable.

health issues or substance abuse issues that would constitute a substantial change in one of the Section 2 factors.

[52] Under these circumstances, we conclude that the trial court clearly erred by granting Father's petition to modify custody. The trial court improperly used temporary, already resolved, circumstances in Mother's life and the extraordinary delays in this case to find a substantial change. We conclude that the trial court failed to identify a valid substantial change in one of the Section 2 factors and, thus, erred by granting Father's petition for modification of custody. Accordingly, despite the substantial deference that we give the trial court in custody matters, we must reverse.

## Conclusion

[53] Mother fails to demonstrate that her due process rights were violated by the emergency temporary change of custody. We, however, conclude that Mother's due process rights were violated by the extraordinary delays in conducting the final custody hearings and the trial court's denial of Mother's discovery requests to the guardian ad litem. Moreover, Mother has demonstrated that the trial court failed to identify a valid substantial change in one of the Section 2 factors.

[54] The trial court erred by granting Father's petition for modification of custody, and we must reverse and remand. Because we reverse the trial court's final determination, we return the parties to their joint legal and physical custody

agreement, which was in effect before the temporary emergency custody order was entered.

[55] Reversed and remanded.

Bradford, J., concurs.
Crone, J., dissents with separate opinion.

**Crone, Judge, dissenting.**

[56] I agree with the majority that Mother's challenge to the March 2020 emergency custody modification order is both moot and waived and that Mother had a right to seek the discovery that she requested from the GAL. But that is where my agreement with the majority ends.

[57] Regarding the interval between the emergency custody modification order and the start of final custody hearings, I find it significant that after the trial court set the final hearing dates in September 2022, Mother agreed to vacate the November hearing date to "allow the parties to continu[e] working toward a resolution." Appellant's App. Vol. 2 at 22. If Mother truly believed that time was of the essence, she should not have acquiesced to any postponement. Moreover, far from being prejudiced by the delay, Mother was given an opportunity to get her life in order and establish her fitness for reinstatement of joint custody. Also, I fail to see how Mother was harmed by the trial court's denial of her discovery requests, given that the GAL testified without using his notes or a summary thereof and Mother was able to fully cross-examine him.[15]

[58] Finally, I believe that the majority has improperly substituted its judgment for the trial court's in overturning the custody modification. If a trial court's custody determination is supported by substantial evidence, we will not disturb

---

[15] The majority states that "[t]he record does not indicate whether the GAL was an attorney." Slip op. at 10 n.3. At the hearing, the GAL recited his "education background[,]" which culminated with a "bachelor's degree in business." Tr. Vol. 2 at 120.

it, "even though we might have reached a different conclusion if we had been the triers of fact." *In re Marriage of Richardson*, 622 N.E.2d 178, 179 (Ind. 1993) (quoting *Meehan v. Meehan*, 425 N.E.2d 157, 161 (Ind. 1981)). There is no indication that Father obtained temporary custody of Child with the goal of presenting evidence of Child's "'improvement' as a 'back-door' way of relitigating the initial custody determination." *Joe*, 670 N.E.2d at 22. Rather, the record indicates that the emergency custody modification was prompted by legitimate concerns regarding Mother's mental health and substance abuse issues and domestic violence, which reportedly occurred in Child's presence.

[59] Regardless, as the majority acknowledges, a child's improving condition "may be part of a trial court's consideration of the child's best interests." Slip op. at 31 (citing *Joe*, 670 N.E.2d at 23). And here, the trial court determined that modifying the original custody arrangement was in Child's best interests. Although I might have reached a different conclusion if I had been the trier of fact, I am disinclined to reverse the ruling of "the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand[.]" *Steele-Giri*, 51 N.E.3d at 124. Therefore, I respectfully dissent.

ATTORNEYS FOR APPELLANT

Trisha S. Dudlo-McCracken
Derrick W. McDowell
Dentons Bingham Greenbaum LLP
Evansville, Indiana

ATTORNEY FOR APPELLEE

Lisa B. Harris
Long Law Office, P.C.
Boonville, Indiana